Sewall, J.,
delivered the opinion of the Court.
The question to be decided respects altogether the assessment of damages. The plaintiff’s right of action is admitted ; and as to the damages, the plaintiff’s wages, from his shipment until the completion of the outward voyage, are admitted to be due. The plaintiff insists on his wages reckoned until his return to Portland, and *154 he has obtained a verdict to that extent, notwithstanding the inter ruption and entire failure of the homeward voyage, and the loss of the vessel and freight. His demand is argued upon the ground that the failure of the homeward voyage, and the loss of the vessel, happened by the fault of the owners or of their agents, the master of the vessel or the supercargo, and not by any inevitable accident or peril contemplated in the contract. The interruption of the homeward voyage, and the seizure and condemnation of the vessel, were the consequence, as it appears, of her employment in a contraband trade, unlawful by the revenue laws of Great Britain.
It is said by the counsel for the plaintiff, in arguing the case of Abernethey vs. Landale, (2) that the maxim, “ Freight is the mother of wages,” is not universal and without exception ; and a seizure for debt, or for having contraband goods on board, are stated as cases where seamen have been holden to have a right to their wages up to the time of the seizure; because the failure of the voyage is owing to the act of the owners, and not to any negligence of the crew. This position is warranted by Molloy; (3) but the cases he puts are of supposed contraventions of the municipal laws of the country where the contract is to be enforced. So we think he is to be understood. “ The lading of prohibited goods,” he says, “aboard a ship, as wool and the like, though it subjects the vessel to forfeiture, yet it disables not the mariner of his wages.”
The decision in the state of New York, cited in the argument for the plaintiff, was in a case of palpable fraud [*146] *and misconduct; where the sailor had been shipped for a different voyage than that which was afterwards pursued, under a pretence of necessity.
It must be a very strong case, we think, — one where the sailor had been deceived, and unwillingly misled, or compelled into a service unlawful by the laws of the country where the contract is to be enforced, —that shall entitle him to a forfeiture against his employers ; for such it is, although in the name of wages, when his earnings are reckoned beyond the period of employment and service. (4)
The case at bar, as it is stated in the exceptions, is not one in which the claim for wages is to be extended to the plaintiff’s return to his home. We do not decide that he is not entitled to the time of the seizure ; although a majority of the Court incline against this extent of. his demand, or considering this as a case excepted in any degree from the general rule. We are not called upon, by any rule of policy or comity, to enforce the revenue laws of Great Britain.
Upon the whole, the motion for the defendants upon their excep *155 tions is sustained; and there is to be a new trial, the verdict taken at the former term being set aside, (a)

 Doug. 539

 Mol. lib 2, c. 3, § 7. —Abbott, 434.

 See 5 Esp. Rep 6

 [The Court, in the above case, seem to have relied upon the common axiom, that “ Freight is the mother of wages.” Some decisions at nisi prius, in England, may be thought to countenance this decision. In Eaken vs. Thom, (3 Esp. N. P. C. 6, ) Lord EUcnborough held a seaman could not recover any wages, where the voyage, after having been partly performed, was necessarily abandoned in consequence of the unseaworthiness of the vessel when she sailed. His lordship said, M If the owner sent her out under such circumstances, it should be the object of a special action on the case.” And in Brown vs. Montes, (MSS. Holt, Ship., 2d ed. p. 276,) Abbot, L. C. J., who must be admitted to be high authority, in a similar case said, “ The law of this country is, No freight, no wages.” “If the unseaworthiness of the ship prevented her from earning wages, this might be a ground of a special action on the case against the owners, as constituting ~a special grievance.” Lord Stowell, too, in the case of The Juliana, (2 Dod. 510,) said, “ Freight is the mother, and the only mother, of wages. If that goes, every thing goes.” But, in the case of The Neptune, (1 Hagg. 232,) his lordship saw fit to be more explicit, and to lay down the rule in more qualified terms. “ The maxim, (that freight is the mother of wages,) though generally received,” his lordship said, “ like most other maxims delivered in figurative terms, certainly is not formed with real and strict accuracy. For the natural and real parents of wages are the mariner’s contract, and the performance of the service covenanted therein: they in fact generate the title to- wages.” “ Although the rule prevails generally, it by no means follows universally, é converso, that, when no freight is due, no wages are due also.” Mr. Jacobsen, in his laborious and comprehensive work, says, “ It is a general rule that freight is the mother of wages, but to this there are several exceptions; ” and he enumerates some of them. There are others that are not enumerated; as the case of ships going out in pursuit of a freight and returning disappointed, without a cargo; in which case it can never be said that the seamen are not entitled to their wages, both on the outward and on the return voyage, though no freight whatever was earned. A rule, so evidently bending to reasonable exceptions, can never be considered as universally conclusive, in the absence of all other confirmation, arising either from the institutions of nations, or from the decisions of their tribunals, and standing in opposition to reasonable principles of law and jurisprudence, and to public utility and convenience. The reporter refers to the American edition of Mr. Jacobsen's work, and cites from a note of the American edition the following as the excepted cases referred to by his lordship, viz., “ as where the voyage is lost by the fault of the owners, as if the ship be seized for their debt, or on account of having contraband goods.” p. 153. Indeed the quotation made by his lordship is evidently from the same note, and part of the same sentence. Nothing of the kind is to be found in the text of Mr. Jacobsen. His lordship evidently mistook the note of the American editor, taken principally from the learned and elaborate judgment pronounced by Kent, C. J., in the case of Hoyt vs. Wildfire, (3 Johns. Rep 520,) for part of the work of Mr. Jacobsen. This, however, is wholly unimportant, as it does not in the least diminish the weight of his opinion. In Molloy, (b. 2, c. 3, see. 7, ) it is said, “ If a ship happens to be seized for a debt, or otherwise to become forfeited, the mariners must receive their wages, unless in some cases where the wages are forfeited as well as the ship; as if they have letters of marque, and instead of that they committed piracy, by reason of which there becomes °a forfeiture of all; but lading prohibited goods aboard a ship, as wool, &c., though it subject the vessel to a forfeiture, yet it disables not the mariner of his wages, for they having honestly performed their parts, the ship is tacitly obliged for their wages. But if the ship perishes at sea, they lose their wages, and the owners their freight; and this, being the marine custom, is allowed by the common law, as well as the civil law.” — Viner's Abr., Mariners, A, 2, pi. 10. — Molloy, however, is not a writer usually placed in the first class of authority upon such subjects. By the ordonnance oí ±jOuís XIV., (Valin, Des Loyer de Matelots, art. 3,) it is declared that “ Si le voyage est rompu par le fait des proprietaires, maitres, ou marchands, aprés le voyage commencé, les matelots loués au voyage, seront payés de leurs loyers en entier; et ceux loués au mois, des loyers, dft* *156 pour le temps qu’ils auront serví, et pour celui qui leur sera nécessaire a s’en retoumei au lieu du départ du vaisseau.” Pothier says, (Louage des Matelots, N. 203,) u Quoique la durée du voyage ait été, par sa rupture plus courte que si le vaisseau fuit alié jusqua’ au lieu de sa destination, le maitre ne doit pas pour cela étre déchargé pour paitie de son obligation, parceque cette rupture est son fait, et qu’un débiteur ne peut pas par son fait se décharger de son obligation.”—See Cod.de Comm. liv. 2, tit. 5, ait 252.
PardessuSj a writer on commercial law of some note, says, (par. 3, tit. 3, c. 1, sec. 2, n. 683,) 16 La confiscation, dont le résultat est aussi de dépouiller le propriétaire difieran! de la prise, en ce qu’elle est un peine pour infraction aux lois et réglemens de I’autorité compétente, ne seroit pas considérée comme une exception de force majeure. Si elle provenoit d’un contravention de Varmateur, il n’en seroit pas tenu envers les gens de mer. II en seroit de méme si elle avoit lieu par la faute du capitaine, dont il doit repondré, sauf son recours contre lui. Si elle est imputable é. quelques chargeurs, l’armateur est tenu aussi de payer les gens de mer sauf son action en garantie.” — See, too, Roccus, not. 43. — Malyne, Lex Merc. p. 105. — Sea Laws, 457. — 3 Johns. Rep. 518. — 3 Car. & Pa. 3.—In a note of the decisions of Judge Winchester, (Peters, Ad. R. p. 192,) it is said, “ Seamen are in nowise affected, if the loss of the freight results from the agreement, or the fault of the owner.” So, in M1 Quirk and Others vs. The PencL ope¡ (2 Pet. 276,) it is said, “ If, indeed, a ship be forfeited by the misconduct of the owner, and the seamen are not amenable, this may be shown against the owner, whether he is insured or not.” These are the principal authorities which in any way relate to the question. And whether we apply the rules of the common law, or of the civil or maritime law, there would seem to be no reason why, if the seaman has always been ready and willing on his part to fulfil his contract, but has been prevented from entire performance by the act of his employers, he should not be entitled to a compensation for his services. In the nisi prius cases before referred to, it seems to have been conceded that he may have his action on the case for damages. But there seems to be no reason why, even by the strict rules of the common law, he may not sue upon the contract for wages. And if he be entitled to recover any thing, it would seem to be equitable and reasonable that he should at least recover up to the time when, after the breaking up of the voyage, he did return or might have returned home.
In Lemon vs. Walker, (9 Mass. Rep. 404,) and Alfridson vs. Ladd, (12 Mass. Rep. 173,) it seems to have been considered by the court that a mere capture of a neutral ship dissolves the relation between the owners and the master and the crew: But this doctrine is impugned by the opinion of the same court, delivered in Spofford vs. Dodge, (14 Mass. Rep 72,) and clearly is not sound. — See Bordman vs. The Elizabeth, 1 Pet. Ad R. 129.— The Saratoga, 2 Gall. 164.—Emerson vs. Howland, 1 Mason, 45.— Willard vs. Dorr, 3 Mason, 161. — The opinion of the court, in the case of Lemon vs. Walker, is hardly consistent with itself in all its parts. For it is admitted that the master is bound to stay by the ship to see to her preservation, and to endeavor to obtain her discharge, and to engage the necessary aid in the care of her; and there is no fact in the case from which it might be inferred that the master had a reasonable expectation of a release j nor that the services of the party were not proper for the preservation tf the ship, and the jury had given a verdict in his favor. — En.]