## Case No. 17,402.

### WELLS et al. v. MELDRUN.

[Blatchf. & H. 342.] [1]

District Court, S. D. New York. Oct. 22, 1832.

SEAMEN'S WAGES — CONDEMNATION OF VESSEL IN FOREIGN PORT—ACTION AGAINST MASTER.

1. Where an American vessel is condemned as unseaworthy, and is voluntarily sold in a foreign country on that account, and the voyage is relinquished, and the seamen are paid their wages only up to the time of the sale, they are entitled to two months' extra wages, under the 3d section of the act of February 28, 1803 (2 Stat. 203).

[Cited in Hoffman v. Yarrington, Case No. 6,-580; The Wenonah, Id. 17,412.]

2. Whether the same rule would hold in the case of a sale of a vessel in invitum, as, by compulsory sale for the violation of a penal law, or where the sale was rendered necessary by disasters at sea, quere.

3. Where the two months' wages are due, and have not been paid to the foreign consul, as provided by the act, the seamen may recover them in an action against the master in their own names.

[Cited in Dustin v. Murray, Case No. 4,201; Gove v. Judson, 19 Fed. 524.]

In admiralty: This was a libel in personam, by [Joseph Wells and others] American seamen against [John Meldrun] the master of an American vessel, to recover two months' extra wages, under the 3d section of the act of congress of February 28, 1803 (2 Stat. 203), which provides, "that whenever a ship or vessel belonging to a citizen of the United States shall be sold in a foreign country, and her company discharged, it shall be the duty of the master or commander to produce to the consul, vice-consul, commercial agent, or vice-commercial agent, the list of his ship's company, certified as aforesaid," (in the manner prescribed in the 1st section) "and to pay to such consul, vice-consul, &c., for every seaman or mariner so discharged, being designated on such list as a citizen of the United States, three months' pay, over and above the wages which may then be due to such mariner or seaman; two-thirds thereof to be paid by such consul or commercial agent to each seaman or mariner so discharged, upon his engagement on board of any vessel to return to the United States, and the other remaining third to be retained for the purpose of creating a fund," &c. The libellants shipped on a voyage from New-York to ports in the bay of Mexico, and back. The vessel proceeded to Campeachy, and was there condemned as un-

seaworthy, and sold, and the libellants were discharged, receiving only their wages up to the time of discharge. They demanded, at the time, the extra wages for which this action was brought, but payment was refused, and they afterwards returned to New-York.

Edwin Burr and Erastus C. Benedict, for libellants.

Thomas L. Wells and Charles Bushnell, for respondent.

BETTS, District Judge. The question presented is, whether the case of the libellants comes within the 3d section of the act of congress of February 28, 1803 (2 Stat. 203). The libellants show themselves to be literally within the terms of the act in both of the particulars therein specified. The vessel was sold, and they were discharged; and the question raised is, whether the legislature intended to give the increase of wages on the mere facts that the vessel is disposed of and her crew are discharged. The respondent contends, that the sale was made ex necessitate, and was not one within the contemplation of the act; and that, to secure to a seaman the privilege of extra wages, the vessel must be sold voluntarily by the master or owner, as a subject of traffic, and for employment in navigation, and not as useless in that respect, or perishing. The provisions of the act may not apply to a compulsory and involuntary sale, as for the violation of a penal law at the place of sale (Oxnard v. Dean, 10 Mass. 143); or where the sale is rendered absolutely necessary by shipwreck, or other casualty, which has destroyed the navigable quality of the vessel, and against which no care or effort of the master could guard (The Saratoga [Case No. 12,355]). The necessity for the sale, in this instance, for unseaworthiness, was not the result of any casualty to the vessel; nor was the sale compulsory, under any coercion, judicial or administrative, at the foreign port, so as to take away the discretion and free action of the master. There is no proof that the vessel was even irreparable, or that the unseaworthiness was more than the result of the natural wear of the ship on her voyage, or of her imperfect condition when sent to sea.

I do not consider the statute as contemplating solely cases of the disposal of vessels abroad, by way of trade or traffic, and as articles of merchandise. The reason of its provisions would alike embrace those cases in which the master or owner abandons a voyage, and makes sale of the vessel, to avoid the expense of repairing her, or to escape an anticipated loss, beyond her value, by continuing the voyage. There seems to be no ground for a distinction, so far as the mariner is concerned, between a sale for the purpose of positive profit, and one for the purpose of avoiding a loss. In both cases, the owner, acting through his agent, makes the sale voluntarily. The property is, in neither case, dis-

[1] [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]

posed of by act of law, in invitum as to the owner. I, therefore, consider the sale, in the present case, as one of the descriptions of sale to which the provisions of the statute apply.

The second requisite of the statute, that the seaman shall be discharged, is also satisfied by the relinquishment of the voyage and the payment of his wages without claim to his further service. Had the master, because of the unseaworthiness of his ship, provided another vessel, and insisted upon completing the voyage, the mariners would have been bound to continue its prosecution. They would have had no right to insist that their contract was with a specific ship, excluding any other that was supplied in her place under an exigency fairly justifying the change; and, if they had refused to proceed in such substituted vessel, they might be deemed deserters, and be subject to a forfeiture of wages. Hindman v. Shaw [Case No. 6,514]. No such call was made upon them, and they are to be regarded, on the facts in proof, as entitled to recover the two months' pay given by the statute, as wages legally due them. Hindman v. Shaw [supra]; Emerson v. Howland [Case No. 4,-441]. The supreme court of this state, in Ogden v. Orr, 12 Johns. 143, held. that the act of 1803 created no obligation on the master to pay these extra wages directly to the seamen; and, that to allow a seaman to recover them, would deprive the fund intended to be created, of the proportion reserved by the statute, and the consul of his commission. See, also, Van Beuren v. Wilson, 9 Cow. 158. The authority of the case of Ogden v. Orr is of great weight; and, if it were not counteracted by high authorities, more appropriately entitled to lead this court on a question of seamen's rights, I might feel called upon to defer to it. It is manifest, however, that the decision of the supreme court rests upon close points of common law, which restricts the remedy of the party to the direct right conferred upon him by the statute. Here there is no engagement of the master binding him to pay the extra wages, nor is a right to them given directly to the seamen as against the master. But a court of admiralty acts upon the spirit and equity of the claim; and, finding that the act of congress imposes a duty on the master to pay the money to a public agent, and secures a portion of it to the crew, that court avoids the circuity of, first. a suit by the consul to compel the master to perform the duty, and next, another by the seaman to recover his share out of the hands of the consul. It effectuates the beneficent purpose of the statute, through the self-interest of the seaman, and does not make his privileges under the act depend upon the fidelity of the master in complying voluntarily with its requisitions, or upon the vigilance of the consul in enforcing it. To this end, it regards the money intended for the crew, as their wages, and the master as directly liable to them therefor, if he has not deposited it with a consul.

I am satisfied that the statute admits of this construction, and, both because of the persuasive equity of such interpretation, and to maintain uniformity in the proceedings of the admiralty courts in the different districts of the United States, I shall adopt the practice already recognized and approved by those courts (Hindman v. Shaw [supra]; The Saratoga [supra]; Emerson v. Howland [supra]; Orne v. Townsend [Case No. 10,583]). and consider their decisions, in this respect, as of higher authority than the decision of the state court. See The Courtney, 1 Edw. Adm. 239. I am satisfied that the statute will, without this method of enforcing it, be, in effect, a nullity. The extra allowance being denominated wages in the statute, the portion of it which belongs to each seaman may be recovered in this court, against the master, as wages. Each libellant in this case is, accordingly, entitled to recover two months' wages, and his costs.

Decree accordingly.