Nicholson, C. J.,
delivered the opinion of the Court.
On the 18th of September, 1867, Thompson Dean, a citizen of New York, filed his bill in the Circuit Court of. the United States, for the District of West Tennessee, against the Memphis Gayoso Gas Co., the city of. Memphis, and the Memphis Gaslight Co., in which he alleges that he was a large stockholder in the Memphis Gaslight Co., which company, by the terms of its charter, was entitled to the exclusive franchise of manufacturing and ' selling gas to supply the city of Memphis and its inhabitants with gaslight.That this exclusive privilege was being infringed by the Gayoso Gas Co., which claimed* the right to manufacture and sell gas in the city, and was engaged in tearing up the streets and pavements, and in laying down its pipes preparatory to becoming a competitor of complainant in the sale of gas. That the city of Memphis has taken steps to perfect a subscription of ' $250,000 of stock in the Gayoso Gas Co. by submitting the proposition to a popular vote, in violation of the chartered rights of the company. That complainant has applied to the President and Directors of the Memphis Gaslight Co., of which he is the largest stockholder, and urged upon them to *317 proceed in the courts against the city of Memphis and the Gayoso Co., which they decline to do, alleging that they have already filed a bill in the Chancery Court at Memphis, and have obtained a partial injunction, and they do not see fit to proceed further in the premises, whereupon he prayed for and ob"tained an injunction, and executed bond in the penalty of $75,000, payable to the Gayoso Cas Co., with ' E. M. Cash, G. Falls, J. M. Tomeny, L. Hanaeur, and R. P. Walt, as sureties, conditioned to pay all costs and damages that may be recovered against him in consequence of the suing out of said injunction. .To the bill so filed the Gayoso Gas Co. filed pleas in abatement, denying that the Memphis Gaslight Co. have refused to take legal steps to assert and maintain the rights of complainant, and' all. other stockholders ; on the contrary, that they did file a bill in the Chancery Court at Memphis, wherein the same relief was sought, and the same matter of complaint urged as in complainant’s bill, making the record of the suit in the Chancery Court at Memphis a part of their plea, which cause was then pending and being prosecuted by the attorneys of the Memphis Gaslight Co., who are the same attorneys who are prosecuting complainant’s bill.
Upon the argument of the pleas in abatement, the Judge of the Circuit Court of the United States overruled the same, and took jurisdiction of the parties and of the subject matter, and determined that no prior suit is pending between the same parties, and for the same subject matter.
*318 The Gayoso Gas Co. thereupon answered the bill of complainant, denying that the Memphis Gaslight Co. have the exclusive franchise claimed, and setting up and relying upon the same matters set forth in their pleas, no abatement, and charging that the antagonism between complainant and the Gaslight Co. is pretended, and not real. The city of Memphis answered, adopting the answer of Gayoso Gas Co. Replications were filed by complainant to the answer. The cause was heard by consent on bill, answers, and exhibits, when the court decreed that complainant was entitled to the relief prayed for, and ordered that the injunction granted be made perpetual.
From this decree the Gayoso Gas Co. appealed to the Supreme Court of the United States. Upon application to that court, the complainant was required to execute an additional bond in the further sum of $75,000, which was done, with James M. Williamson and J. J. Murphy as his sureties, conditioned as the former bond. Upon the hearing of the cause in the Supreme Court of the United States, it was determined that the only question it was competent for the complainant, as a stockholder of the Memphis Gaslight Co., to compel the Directors to present to a court of justice, was that involving its exclusive right under the charter to furnish the city of Memphis with gas; and as that had been presented to a court of competent jurisdiction, in a suit then pending, he is disabled, according to the settled rule on this subject, from instituting a suit in his own name in another court. It was therefore ordered that the decree *319 below be reversed, and that the bill be dismissed by the court below, which was done on the 7th of January, 1870.
On the 24th of January, 1870, the case of the Memphis Gaslight Co. against the Gayoso Gas Co. was heard by Special Chancellor Isham G. Harris, when ,it was decreed that that part of complainant’s bill which claims that the privileges granted to complainant to manufacture and vend gas to the corporate authorities and inhabitants of the city of Memphis, and to use the streets, lanes, and alleys of the city for the purpose of laying down gas-pipes, conductors, etc., are exclusive, be dismissed. Thereupon, in January, 1870, the Gayoso Gas Co. commenced this suit against Thompson Dean, J. J. Murphy, J. M. Williamson, G. Falls, F. M. Cash, and J. M. Tomeny, in the Circuit Court of Shelby county, in which they claimed $400,000 as damages, consequent upon the suing out of the injunction in the Circuit Court of the United States. The declaration contained seven counts, four of which were based upon the two injunction bonds of $75,000 each, and the other two for maliciously prosecuting the suit in the Federal Court without probable cause.
Demurrers were sustained to all the counts in the declaration, whereupon an amended declaration, consisting of several counts, was filed against Thompson Dean alone, and one count against all of the. defendants, to which declaration the defendants pleaded the general issue. Whereupon Thompson Dean filed his petition, and procured an order transferring the case, *320 as to him, to the Circuit Court of the United States, and at the October Term, 1871, the cause as to the other defendants (except F. M. Cash, as to whom it was abated,) was tried before a special jury on the single amended count, when there was a verdict against J. J. Murphy, J. M. Williamson, and J.. M. Tomeny for $300,000, and a verdict in favor of defendants, G. Falls, L. Hanaeur, and R. P. Walt.
Defendants Williamson, Murphy, and Tomeny moved the court to set aside the verdict and grant a new trial, and also to arrest the judgment as to them. The motion 'for a new trial was granted as to Murphy and Tomeny, and overruled as to Williamson. The motion in arrest of judgment was sustained as to Williamson. From this action of the court in arresting the judgment, and in refusing a new trial as to Falls, Hanaeur, and Walt, the plaintiff has appealed, and defendant Williamson appealed from the judgment refusing his motion for a new trial.
The first question arising on the motion in arrest of judgment is, whether, the declaration set out a sufficient cause of action? and néxt, if it does not, whether it is such a defect as is cured by a verdict?
The substantial averments in the declaration are as follows: That the defendants combining, confederating, conspiring and aiding and assisting the said defendant Dean, not having any reasonable or probable cause of action whatever but wrongfully intending to harrass, oppress, and injure the plaintiff, falsely and maliciously caused and procured to be sued out and prosecuted on the equity side of the Circuit Court of the United *321 States, a suit in which the defendants prayed for and obtained an injunction to restrain plaintiff from the laying of gas-pipes, etc., and which suit the defendants did falsely' and maliciously prosecute, and contin.ued to prosecute, until the 18th of October, 1869, when the said injunction was dissolved by the Supreme Court of the United States, and the said suit ordered to be dismissed, which was done in pursuance-of said mandate, whereby plaintiff sustained damages,, etc. The objection taken to this declaration is, that in averring the obtaining of an injunction in the Circuit Court of the United States, and the continuance of such injunction until it was dissolved, and the suit ordered to be dismissed by the Supreme Court of the United States, it is necessarily implied that the Circuit Court gave judgment in the case in favor of the defendants in this suit, and that the same was reversed on appeal to the Supreme Court; and therefore that this averment, being inconsistent with the averment of want of probable cause for prosecuting the suit, no judgment could be pronounced, even after verdict, upon the declaration.
We think the fair interpretation of the averments in the declaration is, that there was a judgment in the Circuit Court against plaintiff, and that the same was reversed on appeal to the Supreme Court; and we are to consider the declaration as if these aver-ments had been distinctly' made. There is some conflict in the authorities on the legal effect of such inconsistent or contradictory averments. Reynolds v. Kenedy, 1 Wilson, 232, is the leading case which has *322 been supposed to bold that the averment in a declaration that the prosecution, which the plaintiff charges to have been malicious, was decided by a competent tribunal in favor of the plaintiffs in that tribunal, the judgment so rendered is to be regarded as conclusive evidence of probable cause. The same doctrine was laid down in Whitney v. Pecklen, 10 Mass., 143, and followed by Clern v. Grey, 13 Grey, 201. The same rule is adopted to its full extent in Williams v. Woodhouse, 3 Dev., 257.
•In the case of Burt v. Place, 4 Wend., 591, Judge Marcy makes this criticism on the case of Reynolds v. Wilson: “Taking the case as presented by the report, and as explained by the learned judges to whom I have referred, it seems to be no more than this, that if it appears by the plaintiff’s own declaration that the prosecution which he charges to have been malicious was before a tribunal having jurisdiction, and was then decided in favor of the plaintiff in that court — nothing appearing to fix on him any unfair means in conducting the suit — the court will regard the judgment in favor of the prosecution as satisfactory evidence of probable cause. The question seems to have been what was sufficient rather than what was conclusive evidence of probable cause ? ”
This subject was again reviewed, and all the cases examined, in the case of Palmer v. Avery, 41 Barb., 301, when Judge Morgan said: “I think, therefore, it may be safely assumed that all these cases agree in holding that in an action for malicious prosecution, a prior judgment in favor of the plaintiff below, after *323 a trial upon tbe merits in a court of competent jurisdiction, is sufficient evidence of probable cause, and unless an attempt is made to impeach it for fraud, or conspiracy, or subornation, it is the duty of the court to grant a non-suit.”
Without referring to other cases, we think it sufficient to add that the great weight of authority may be regarded as having established the rule that the judgment of a court of' competent jurisdiction, in favor of the plaintiff below, after reversal in a higher court, is to be taken as prima facie evidence of probable cause.
In the present case the averment in the declaration is not simply that the defendants maliciously, and without probable cause, aided in procuring the injunction to be granted, but that they continued, falsely and maliciously, to prosecute the same until its reversal in the Supreme Court. The fair implication from this language is, that the decree rendered by the Circuit Court, which was reversed on appeal to the Supreme Court, was falsely and maliciously procured by the defendants. Upon this interpretation of the language of the declaration, the defect was such as a special demurrer would have reached, and hence that it was only the defective statement of a good cause of action, and therefore cured by verdict. But if it be conceded that the charge, that the • decree in the Circuit Court was procured by fraud is not to be fairly inferred from the language of the averment, then, upon the rule already adopted as to the legal effect of a judgment in the Court below, it follows that the *324 declaration is defective in omitting to aver a state of' facts which, if averred, it would have been competent to prove, and which if proven would have shown that the judgment below was procured by fraud; and therefore furnished evidence rebutting the presumption of probable cause. The question then occurs, is such a defect cured by verdict ?
Mr. Chitty, in his work on Pleading, vol. 1, p.. 673, says, “the doctrine upon this subject is founded on the common law, and is independent of any statutory enactments. The' general principle upon which it depends appears to be, that where there is any defect, imperfection, or omission in any pleading, whether in substance or in form, which would have been a fatal objection upon demurrer; yet if the issue be such as necessarily required in the trial, proof of the facts so defectively or imperfectly stated or omitted, and without which it is not to be presumed that either the judge would direct the jury to give, or the jury would have given, the verdict, such defect, imperfection, or omission, is cured by the verdict.”
This rule was expressly adopted by this Court in Cannon v. Phillips, 2 Sneed, 191, and has been uniformly followed. Applying this rule to the declaration before us, it is clear that the defect was in the imperfect statement of a good cause of action which was cured by the verdict.
It follows that the Circuit Judge erred in arresting the judgment. We have already stated that the Circuit Judge overruled the motion of J. M. Williamson for a new trial, and that he has appealed for the pur *325 pose of reversing that action of the court below. We proceed, therefore, to consider the several errors relied •on here for a reversal.
We will first notice the errors assigned upon the refusal of the Circuit Judge to give in charge to the jury several written instructions. The Judge declined to instruct the jury whether or not the Memphis Gaslight Co. has by its charter the exclusive right to manufacture gas for the city of Memphis and its inhabitants. It was upon the allegation by Dean that the Gaslight Co. of which he was the largest stockholder, had this exclusive right, that he. obtained the injunction against the Gayoso Gas Co., out of which this suit originated. On the question of damages,- at least, it was legitimate for Dean to show, if he could, that in applying for the injunction he was seeking to protect a substantial and valid right. In this view he had a right to have the judgment of the court on the instructions requested. It was a risk which he elected to take, and -it was error in the court to decline to respond to the request. Whether it was such error as he now has a right to complain of, depends upon the response which the court ought to have given to the instruction requested. The Memphis Gaslight ‘Co. was chartered in 1851, with all the rights, privileges, powers, and restrictions, contained in the second, third, fourth, fifth, sixth, seventh, eighth, ninth, eleventh and twelfth sections of an act incorporating the Nashville Gaslight Co., passed in 1849. The claim to an exclusive right rests mainly upon the third section of the act of 1849, which is in these words:
*326 “See. 3. It shall be the duty of said company to. establish within three years from the 1st of January,. 1850, a gas manufactory within the city of Nashville,, of sufficient capacity to supply its corporate authorities and inhabitants with such public and private gaslight as may be required.”
The question presents itself, was it the intention of the Legislature, by this language, to confer upon the company chartered the exclusive right to manufacture- and sell gas in Memphis until the expiration of the-ninety-nine years of the existence of the charter? In. the Binghampton Bridge Case, 3 Wallace, 75, the court said: “ In the case of the Charles River Bridge, the-rules of construction known to the English common law were adopted and applied in the interpretation of legislative grants; and the principle was recognized, that charters are to be construed most favorably to the State, and in grants by the State, nothing passes by implication. This Court has repeatedly since re-asserted the same doctrine, and the decisions in the several States are nearly all the same way. This, principle is this: that all rights which are asserted against the State must be clearly defined and not raised by inference or presumption; and if the charter is. silent about a power, it does not exist.”
The rights and privileges granted to the Memphis Gaslight Co. are to be determined by the rule of interpretation here laid down. The second section pro-, vides that the business of said company shall be to-establish and construct gas works in the city of Memphis, etc. The third section makes it the duty of' *327 the company to establish their gas manufactory within three years, and of sufficient capacity to supply the corporate authorities and the inhabitants with such gaslight as might be required.
The plain obvious meaning of the Legislature was,, to secure the establishment of gasworks by the end of three years, of sufficient capacity to supply the demand for gaslight at that time.
By sec. 5, the privilege is given to the company of erecting, establishing, and constructing gasworks,, and manufacturing and vending gas in the city of Memphis by means of public works, for the term oí fifty years, (afterward increased to ninety-nine) from and after the date of this act. These two sections construed together mean, that for fifty years from the date of the act, the company is to have the privilege of erecting gasworks, and selling gas in Memphis but the company is obliged to have gasworks completed at the end of three years, sufficient to furnish all the gas that may then be required. If the duty thus imposed is discharged, the obligation then ceases,, and from that time the company can go on to exercise the privilege granted for fifty years. If at the end of the three years the company had been in default in having failed to comply with its. undertakings the State would have declared the charter forfeited, or probably any citizen might have enforced a specific execution of the contract made by the State for the benefit of the inhabitants of the city; but as this last point does not necessarily arise, we waive an authoritative decision of it.
*328 If it be conceded that the rights of the company-are co-extensive with their duties or obligations, it would only follow, that when the company had discharged its duty by the establishment of sufficient works to supply gas for all who required it, the company would only have the right to sell to such as might require gas. There is no obligation imposed upon any inhabitant to buy its gas, but all would still enjoy the common right of making their own gas, or of buying it from any other manufacturer. There is not only no language i,n the statute which directly confers an exclusive right upon the company, but there is. none from which an exclusive right can be inferred or implied. The argument in favor of an exclusive right is based upon a misconstruction of the obvious intention of the Legislature.
We have not deemed it necessary to resort to authorities in- support of a construction of the statute, which seems to us to be entirely free from ambiguity. But we find in the record an opinion on the question, delivered by the Hon. Isham G. Harris as Special Chancellor, which is so full, clear and conclusive, that we are content to endorse it as the correct construction of the charter. The next error relied on is, that the Judge refused to give to the jury the seventh, eighth, ninth and tenth instructions asked by the defendants, which instructions affirm in substance that the decrees of Judge Trigg in the Federal Court, granting and making perpetual the injunction, were in law conclusive proof of probable. cause, though afterward reversed on appeal — and that those decrees were *329 Hot obtained by any unlawful or improper practices, so far as the proof .went.
We have already disposed of the question whether the decrees in the Circuit Court by Judge Trigg, were conclusive, or only prima facie evidence of probable cause. It was therefore no error in the Circuit Judge to decline to give that instruction' in charge. But to determine the other branch of the proposition, makes it necessary to look to the status of the case rvhen Judge Trigg granted the injunction, and when he decreed that it should be perpetual.
The Memphis Gaslight Co. had filed its bill alleging that its right to supply the city with gas was exclusive — charging that the Gayoso Gas Co. was violating its exclusive rights, by laying down pipes, etc., preparatory to putting in operation a rival company— and praying for an injunction. The Chancellor refused to grant the injunction to the extent prayed for, holding that the rights of the Memphis Gaslight Co. were not exclusive. Soon afterward, the city of Memphis initiated steps for subscribing a large amount of stock in the rival company. Thereupon, and while the former suit was pending, Dean filed his bill in the Circuit Court of the United States,, in which he alleges that he was a citizen of the State of New York; that he was a large stockholder in the Gaslight Co.; that that company had the exclusive right to furnish gas in the city of Memphis; that the Gayoso Gas Co. was infringing upon its exclusive rights by laying down pipes, etc., preparatory to making and selling gas in Memphis. He alleges further, that the Gaslight *330 Co. had entered into a contract with the city of Memphis for the exclusive privilege for twenty years, of furnishing the city with gas for public lamps, and to. lay down its pipes, etc., and that the city of Memphis had inaugurated a proposition to subscribe largely for. stock in the Gayoso Gas Co., and was about to submit the same for ratification by a popular vote, to the inhabitants of the city, in violation of the contract referred to, to the great wrong and injury of the exclusive rights of complainant.
He charges also that “he has applied to the President and Directors of the Memphis Gaslight Co., .of which he is a stockholder, and perhaps the largest, and urged upon them to proceed in the courts against the corporate authorities of Memphis, and also against the said Gayoso Gas Co., which they decline to do, alleging that they have already filed a bill in the Court of Chancery of Memphis, against the last mentioned corporation, and have obtained a partial injunction, and they do not see fit to proceed further in the premises. Whereby, and by such refusal your orator is wholly deprived of and denied the aid of said corporation, of which he is a member, in maintaining the rights and privileges which in this bill he claims the company is entitled to, and is in jeopardy of losing the value of his stock, .and his legal rights in the franchises and the material benefit thereof.”
The bill prays for injunctions against the city, to restrain it from subscribing for stock in the Gayoso Gas Co., and restraining the Gayoso Gas Co. from using the streets, or laying its pipes therein, or com- *331 structing public works for making gas, or from selling the same; and that the Gaslight Co. may be decreed to have exclusive privileges in the premises.
Along with this bill were two letters marked “Exhibits A and B,” but not alluded to in the bill,.which are as follows:
Exhibit “A” to Complainant’s Bill.
“ Memphis, Tenn., Sept. 17, 1867.
J.. M. Williamson, Esq., Prest. Memphis Gaslight Co.:
Sir: — Feeling that my large interest in the Memr phis Gaslight Co. is jeopardized by the charter and action of the Memphis Gayoso Gas Co., and by the action of the Board of Mayor and Aldermen in subscribing a large amount of money to uphold and establish the Memphis Gayoso Gas Co., I call upon you to adopt all possible legal measures to restrain the Board of Mayor and Aldermen from making any subscription whatever for said purpose.
ThompsoN Dean.
By Wm. M. Fitch, Jr., Attorney.”
Exhibit “ B ” to Complainant’s Bill.
“ Memphis, Sept. 18, 1867.
To Wm. E. Eiteh, Esq., Att’y in fact for Thompson Dean :
Your note of the 17th is received, requesting me, as President of the .Memphis Gaslight Co., to adopt all possible legal measures to restrain the .Board of Mayor and Aldermen of Memphis from subscribing a large amount of money or bonds to uphold and establish the Memphis Gayoso Gas Co., and in reply beg leave to state, that the undersigned has, in behalf of the Memphis Gaslight Co., already filed a bill in *332 the Court of Chancery of Memphis, against the said Gayoso Gas Co., and has obtained a partial injunction? and the board of directors of this company do not think proper to proceed further in the premises, and therefore refuse to take any further action.
Very respectfully,
Jas. M. Williamson, Prest.”
Upon this bill, application was made to Judge Trigg for .injunction, when, in pursuance of the rule of proceedings in the Federal Courts, the Gayoso Gas Co. appeared and filed pleas in abatement, denying the jurisdiction of the court on three grounds:
“1. Because, the fact that complainant was a nonresident stockholder, did not give jurisdiction; the company being a resident corporation of the State of Tennessee.
“ 2. Because, it' was not true that the Memphis Gaslight Co. had refused to take all necessary and proper steps to assert and maintain the rights of all the stockholders: on the contrary, that they had filed their bill in the Chancery Court of Memphis, wherein the same matters of complaint were urged, and the relief sought, in all substantial and material regards as the relief sought and complaints urged in this bill; and as evidence of the truth of this allegation, the record in the case in the Chancery Court of Memphis referred to, was filed as part of the plea.
‘‘ 3. Because, the said cause of which the record is presented, is still pending in the Chancery Court of Memphis, where the same relief is sought as in the present bill, etc.”.
*333 It appears in the record of that case, that “this canse coining on to be argued upon the bill and pleadings filed, it is ordered that the plea to the jurisdiction be overruled, and the court takes jurisdiction of the parties and the subject matter of the bill; and upon the presentation of the record from the Chancery-Court of Memphis, it is considered that no prior suit is pending between the parties and for the same subject matter, and the ' plea of prior suit pending is overruled.” Thereupon injunctions were ordered to issue. Answers were then filed by the Gayoso Gas Co. and the city of Memphis.
In these answers the alleged contract between the Gaslight Co. and the city of Memphis is admitted, but it is denied that either by that contract, or by its charter, has the Gaslight Co. an exclusive right to make and furnish gas in Memphis. The only reference in the answer to the pendency of the suit in the Memphis Chancery Court, or to the allegation in the bill, that the Gaslight Co. had refused to take steps to protect the rights of the stockholders, is as follows:
“It is not surprising that complainant, who is the large beneficiary of this rich spoil and fat monopoly, should start with alarm at the prospect of honest competition, and seek by every plausible pretext and every artifice to retain his splendid monopoly. The company is most willing to do all that can he done to second his efforts. It applied without success to the State Court; and then at the bidding of complainant it assumed an attitude of apparent hostility, to afford him a pretext to get a. footing in this honorable Court, and to *334 lake, its chances here. The officer who swore to the hill in ' the State Cov/rt swears to this, and for his fidelity is made attorney in fact with the most extensive discretion; and yet he and the other officers of the company are held out as in a state of antagonism, in order to give jurisdiction. To consent to assume such an attitude against their anxious wish and desire, and perfect readiness to do what complainant wishes, is evidence that the hostility between complainant and the company is pretended and not real; and so defendant charges the fact to be.”
There was replication filed by Dean to the answer, and afterward “ by consent of all parties this cause was set for hearing on bill and exhibit, and on the answer of the Memphis Gayoso Gas Co. and exhibits, and the answer of the Mayor and Aldermen of Memphis; and the said cause coming on for hearing, the same was heard, it is considered that the complainant is entitled to the relief prayed for,” and thereupon the injunctions -were made perpetual.
From this decree, rendered in October, 1867, the defendants appealed to the Supreme Court of the United States. Upon the hearing in the Supreme Court, that court ignored entirely the question as to the exclusive rights of the Gaslight Co., although a decision thereof was sought on both sides in the argument. The case was determined alone upon the original bill of Dean, and upon the pleas in abatement filed by the Gayoso Gas Co. It was conceded, that according to the rule established in the case of Dodge v. Wolsy, 18 How., 331, the complainant stated in his bill a case that *335 gave the court jurisdiction. That rule is stated to be, “ that a refusal of the board of directors to sue, must be such as amounts to a clear default on their part, involving a breach of duty within the rule established, to authorize a stockholder to institute the suit in his own behalf, or for himself and other stockholders.” The Court say: “ The plea in abatement in the record is founded upon this view of the law. If not only denies the refusal, but avers the institution of a suit in a court of competent jurisdiction, and in which the ground of complaint is substantially the same as set forth in complainant’s bill. This is a plea to the person of the defendant, and is properly a plea in abatement, or at least in the nature of abatement.”
After answering and overruling the argument on the side of Dean, that the suit in the State court did not cover all the grievances set forth in his bill, the Court conclude: “ The result of our opinion is, that the only question that it was competent for -the complainant, as a stockholder of the Memphis Gaslight Co., to compel the directors to present to a court of justice, was that involving its exclusive right, under the charter, to furnish the city of Memphis with gas; and as that had been presented to a court of competent jurisdiction in a suit then pending, he is disabled, according to the settled rule on this subject, from instituting a suit in his own name in another court.”
The Supreme Court thereupon reversed the decree below, and ordered the bill to be dismissed.
It is clear that the Supreme Court did not consider the allegations in the bill, as to Dean having *336 called on the directors to sue, and their refusal to do so, as indicated by his correspondence with the President of the Company, as being traversed or put in issue either by the pleas in abatement or by the answers. On the contrary, these allegations are passed over, either as admitted to be true in the state of the pleadings, or as unimportant in view of the fact that the allegation of refusal by the directors to sue was met and traversed by plea alleging that the directors had sued in the State court, and furnishing the record of that suit as evidence of the truth of the plea, and of the falsity of the allegation. This plea being true, it was conclusive against the right of Dean to sue in the Federal Court, without regard to the truth or falsity of his allegations, that he had applied to the directors to sue and that they had. refused to do so, in violation of their duties as trustees. The decision of the Supreme Court, therefore, rests alone upon the error of Judge Trigg in taking jurisdiction of the case, in the face of the record evidence that a suit was pending in a State Court for the same matter in which Demi, as stockholder, was represented by the directors of of the company, and which fact disabled him from suing in another court.
It is obvious that the Supreme Court declined to give any opinion upon the exclusive right set up by the Gaslight Co.; and as that was the only question in issue before the court below, when the cause was heard on bill and answer, and a decree rendered making the preliminary inj unction perpetual; it follows that the reversal by the Supreme Coui’t was not based *337 on error at the hearing of the cause below, but upon error in assuming jurisdiction on the preliminary proceedings for injunction.
Looking to the decree at the heai’ing alone, it is clear that it would furnish not merely prima facie, but conclusive, evidence of probable cause. But as this decree rested upon an erroneous assumption of jurisdiction upon the preliminaiy proceedings, it ceased to-have validity when the original error in assuming 'jurisdiction was corrected by the Supremo Court. The question, therefore, whether these decrees furnished conclusive or prima facie evidence of probable cause,, must at last depend upon the character and cause of the error in taking jurisdiction upon the preliminary proceedings.
To enable Dean to obtain a status in the Federal Court, it was essential that he should allege a refusal by the directors to institute suit, and that refusal should be such as to show a breach of duty as trustees, in so refusing.
The refusal by the directors to sue is alleged indistinct and emphatic terms, and the allegation is fortified by the production of the correspondence before referred to. But in stating his application to the directors to sue, the allegation of complainant is, that lie “ urged upon them to proceed in the courts against the corporate authorities of Memphis, and also against the said Memphis Gayoso Gas Co., which they decline to do, alleging that they have already filed a bill in the Court of Chancery of Memphis against the last mentioned corporation,” etc.
*338 Two obstacles were in the way of getting into the Federal Court — one was, that the directors already had a suit pending in the Chancery Court — the other was, that Dean as a stockholder, could not sue at all, except upon showing a breach of trust in the directors, in refusing to sue. Both of these obstacles had to be avoided. The attempt is made to avoid the first by introducing the city of Memphis as a party, on account of a new grievance growing out of her proposal to take stock in the new company. The other was avoided by charging that the directors had violated their trust, in refusing to sue the city of Memphis, and the new company.
Upon these allegations the complainant came before Judge Trigg, on the application for injunctions. The new company met the allegation with a denial that the directors had refused to sue, and supported this plea by the record of the suit in the Chancery Court; but no issue was taken as to the allegation that the directors had been guilty of breach of trust in refusing to bring another suit. The plea went to the disability of Dean, as a stockholder, to commence another suit, because of the pending of a suit for the same matter, in the Chancery Court. If this plea was sustained, the jurisdiction of the Federal Court could not attach on account of the personal disability of the complainant. The Gayoso Gas Co. rested their case upon this plea. Upon the hearing of the preliminary case, the Judge held that the pending of the suit in Chancery was no answer to the allegation as to the refusal to sue again, perhaps for the reason, *339 that the introduction of the city of Memphis as a party made it a suit between different parties, and the introduction of the question as to the violation of their contract by the city in proposing to take stock in the new company was new and different matter from that in the suit in Chancery. This was not sufficient to authorize the Judge to tahe jurisdiction. It was still necessary that it should appear that the directors had refused to institute the suit. The judge may have understood the first plea as strictly a plea to the jurisdiction, and as raising the question that complainant could not sue, because he did not show that the directors had so refused as to entitle him to sue in his own name. He overruled this plea, .and took jurisdiction. This plea only raised the question, whether a non-resident stockholder of a resident corporation could sue, and was a good plea to the jurisdiction, unless it appered that he was entitled to sue by reason of the refusal of the corporation to sue. This did appear by the allegations of the bill and the exhibits, and was not traversed by the plea.
It follows that Judge Trigg took jurisdiction of the cause because he believed the allegations as to a refusal to be true, and he says, in his testimony, that if he had known that the refusal, as evidenced by the correspondence exhibited, was a mere “sham,” he would not have entertained the case. As the pleadings stood, before him, he was in no error in overruling the plea to the jurisdiction, but he was in error in holding that the pending of the chancery suit did not disable Dean from suing in his own name. This *340 latter holding was clearly an error of judgment as to-the law of the case, and it was this error which was made the sole ground of reversal in the Supreme Court. But this .error was superinduced by his having been influenced to take jurisdiction of the case-upon the assumption of the truth of the allegation as to the refusal of the Directors to institute the suit. If the facts were truthfully stated in the bill and in the correspondence, then there was no error in the act of taking jurisdiction, and the same would be conclusive evidence of probable cause. But until the truth of these allegations is ascertained by proof, the action of the court simply upon the allegations in the bill and the correspondence, would only be prima faoie evidence of probable cause. Whether the allegations, therefore, were made in good faith and truthfully, or whether they were stimulated and gotten up as a fraudulent device to impose upon the court, were questions of fact for the jury, and on which they were to determine under the instructions of the court, whether there was probable cause or not.
The request of the counsel was, in substance, that the Circuit Judge would instruct the jury “that the decrees of Judge Trigg, granting the injunctions and perpetuating them, were not obtained by any unlawful or improper practice, so far as the proof went.” It is . obvious that the judge could not have given this instruction without determining what facts were proven, and thus trenching upon .the province of the jury. The rule, as practiced upon in Tennessee, is, that “whenever an action of this kind is commenced, *341 and a plea of not guilty pleaded, the jury are to try the question of probable cause; and it is a question, then, compounded of law and fact. The jury are to decide it as any other question,' under the direction of the court, as to the law. They judge of the facts for themselves, and receive the law from the court. But neither in this nor in any other case are our courts at liberty to tell the jury that this or that fact is proven or not proven, or that such and such testimony is to be believed or not believed.” Meigs’ Dig., sec. 1296.
In the case of Whirley v. Whiteman, 1 Head, 617, Judge McKinney, in referring to the mode of trying eases consisting of both law and fact, says: The truth of the facts and circumstances offered in evidence in support of the allegations on the record, 'must be determined by the jury; but it is for the court to decide whether or not those facts and circumstances, if found by the jury to be true, are sufficient, in point of law, to maintain the allegations in the pleadings. And this must be done in one of two modes: either the court must inform the jury -hypothetically whether or not the facts which the evidence tends to prove will, if established in the opinion of the jury, satisfy the allegations; or the jury must find the facts specially, and then thof court will apply the law.”
The Circuit Judges have no duties to perform more embarrassing than those of instructing juries in cases involving mixed questions of law and fact. It is a ■difficult and delicate task to state, hypothetically, to a *342 jury the proof relied on by the opposite sides, so that each side shall feel that his evidence has been fully and fairly arrayed; yet such is the duty to be performed, unless a special verdict is ordered. In the present case the Circuit Judge first defined what constitutes probable cause: “ It is the existence of such facts and circumstances as would excite in a reasonable mind the belief of a right to bring the suit, and the want of probable cause or without probable cause, is the want or absence of such reasonable ground as a man of ordinary sagacity would have acted upon under the like circumstances. What these circumstances were you must look to the testimony and find out. The fact that he had brought a suit, if the fact is so, in the State Court for substantially the same thing, and had partially failed; the fact, if it was so, that he supposed he could get a more impartial hearing in the Federal Court than in the State Court, the fact that counsel advised him to bring suit in the United States Court, if the fact is so; the fact that a simulated state of facts was made to appear the truth, and sworn to as true, if these facts, are so, all these facts, and all the other facts and circumstances of the case bearing upon or throwing light upon this branch of the case, you will consider in determining whether or not a man of ordinary sagacity would have acted as Dean or Fitch, or those-who acted with them, if any did, in bringing that suit; and if you find, under this charge, that a naan of ordinary sagacity would have so done, you should; find that there was probable cause.”
*343 The facts from which probable cause -is to be- deduced are to be found by the jury; the deduction,, as matter of law, is to be made by the court. The rule by which the court determines whether there'Ms probable cause or not, is to look at the facts as found by the jury, and from these determine whether a reasonable man, in view of the facts so found, would have instituted the suit.
The Circuit Judge left the jury to find the facts,, and he also left to them the deduction as to whether the facts were such as would háve induced a man of ordinary sagacity to sue. This was a deduction of' law to be made by the court. The objection to the charge is twofold: it fails to lay down with' sufficient distinctness and precision the respective duties which devolve upon the court and jury in determining the question of probable cause. In the next it contains-a partial enumeration of facts from which probable cause, or want of probable cause, is to be deduced,, leaving the jury to ascertain from the other facts and circumstances what influence they ought to have in determining whether there was probable cause or not. This enumeration of a few of the facts was calculated’ to give them a prominence in the estimation of the jury which may have misled them as to the importance to be attached to other facts and circumstances not enumerated. Nothing is said in the charge as to-the weight to be given, on the question of probable cause, to the fact that Judge Trigg, after argument,, entertained jurisdiction of the case and granted the injunction. It is clear that this fact constituted the *344 starting point in the investigation of the question of probable cause. As matter of law, it was sufficient evidence of probable cause until overturned by evidence of fraud or improper conduct in procuring the decision to be made. The burden was on the plaintiff to make proof to overcome this prima facie evidence furnished by the action of the judge. The facts and circumstances relied on by plaintiff to establish fraud or improper contrivance in procuring the injunctions, together with the facts and circumstances relied on by defendants to show that there was no fraud or improper contrivance, should have been submitted to the jury with specific instructions as to what facts and circumstances would, and what would not, amount to such fraud or improper contrivance as would overturn the prima facie force of the action of the court.
On the question as to the consideration to be given to the advice of counsel in the institution of the suit, the Circuit Judge instructed the jury at length, and with marked clearness and particularity. After carefully scanning the whole of the instruction on this branch of the case, and the weight to be attached to the advice of counsel, both in respect' to the question of probable cause and that of malice, we detect no error in it of which the defendants can complain. It is in accordance with the law as declared in Hall v. Hawkins, 5 Hum., 359, and Kendrick v. Cypert, 10 Hum., 297. Nor are we able to see any error in the instructions given on the evidence relied on by plaintiff to show that, the demand by Dean on the *345 Directors to sue, and their refusal to do so, was simulated, and a fraudulent device to pocure the’ injunction. The instruction in substance was, that if the simulated state of facts was made up for the sole purpose of procuring injunctions to vex, and harrass, and oppress the defendants, the decision so procured would not protect the parties so combining. But he further told the jury that if such decision was founded upon such simulated state of facts, and you should be satisfied that the simulation was made wholly or in part for the purpose of asserting a right, or what the parties, acting as men of ordinary sagacity, supposed to be a right, and not wholly for vexation or oppression, you will find for defendants.” The defendants can not complain that the law is not stated sufficiently strong to secure to them its full benefits.
ISTor is the charge on the question of malice subject to objection. The jury were told, correctly, that to enable the plaintiff to maintain the action, malice and want of probable cause must concur. Whether malice alone would be sufficient if the action had been for damages for a malicious abusé of civil process, was not presented in view of the fact that the declaration was expressly for malicious prosecutions, and therefore the judge could not properly be expected to charge on that class of cases. We deem it unnecessary to notice in detail the other instructions, requested to be given, and which were not given by the court, as they were either substantially embraced in the charge, or were such as ought not to have been given. Proof was admitted by the court over the objection *346 of the defendants, showing that Dean was a man of great wealth. As Dean was no party to the suit — « although the proof may have shown him to be a joint-conspirator in getting up and prosecuting the suit in the Federal Court, yet lie would not be responsible to contribute to the other conspirators sued; and therefore the proof as to Dean's wealth was improperly admitted, and the court ought to have charged as to contribution among conspirators.
It is insisted that the Court erred in admitting in proof of the acts and declarations of Dean and Fitch without some preliminary proof of a conspiracy or combination between them and the defendants,, or some of them. The general rule is, that before the acts and declarations of one or more of a company of conspirators, in regard to the common design as effecting his fellows, can be proven, it is necessary to lay a foundation therefor by evidence sufficient, in the opinion of the judge, to establish prima facie the fact of conspiracy between the parties, or proper to be laid before the jury, as tending to establish such fact. 1 Greenl., Sec. 111. But in 3 Greenl., Sec. 92, it is said that “this, like other rules as to the order in which testimony is to be adduced, is subject to exceptions for the sake of convenience, the judge sometimes permitting evidence to be given, the relevancy, of which is not apparent at the time when it is offerred, but which the prosecutor or counsel shows will be rendered so by other evidence, which he undertakes to produce.” 2 Stark Ev., 234, 2 Esp., 719.
"We are to presume that the declaration and acts *347 of Lean and Fitch were admitted upon the assurance of counsel that proof would be produced connecting them with the conspiracy or combination. In this view it was not such error in the exercise of his discretion by the judge as can be complained of here. We deem it unnecestary to say more in regard to the-rulings of the court below on the demurrers to the-original declaration, than that we find no error therein. We hold that there is nothing substantial in the suggestion that the act incorporating the Gayoso Gas Co. does not specifically designate a place at which the corporation should exercise its franchises. It designates as the Memphis Gayoso Gas Co., indicating by its name its locality, where its powers were to be exercised. The essential thing is, that the company is incorporated, and made an artificial person. But after the company was organized at Memphis under its original charter, a supplemental act was passed increasing its capital, and thereby recognizing it as an existing corporation, organized in Memphis. But as the first company had no exclusive right to make and vend gas in Memphis, it could not object to the making and vending gas by others, whether natural or artificial persons. There was no error in the exclusion by the court below of the volume of testimony taken in another suit ‘pending between the two gas companies. The parties to the two suits are different, and the testimony so taken had never been used on the trial in the other, but stood excepted to in that suit, the exceptions not having been disposed of. By that testimony it was sought to show, by the opinion of *348 scientific men and others, that two gas companies can not successfully exercise their franchises in one city. That is not a question of law, but one of fact, which may arise whenever the first company may consider itself damaged by the manner of exercising its franchises by the record. The first company chartered secures the right to exercise its franchise unmolested; but this does not constitute an exclusive privilege, except to the extent that the occupation of the streets and alleys are necessary to the exercise of its privileges. Beyond this the second company has the same privilege.
Under the pleadings in this case we are unable to see on what ground the testimony rejected was relevant to the issues. There was, therefore; no error in its rejection. But for the errors already indicated, the judgment refusing a new trial to Williamson is reversed, and the cause remanded.