# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

HELEN S. ROGERS,          )
                               )
      Plaintiff/Appellee,     )
                               )        Davidson Circuit
                               )        No. 94C-3689
VS.                         )
                               )        Appeal No.
                               )        01A01-9603-CV-00120
THOMAS E. WATTS, JR.,    )
                               )
      Defendant/Appellant.   )

**FILED**

**July 1, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

## APPEAL FROM THE CIRCUIT COURT
### FOR DAVIDSON COUNTY
### AT NASHVILLE, TENNESSEE

## THE HONORABLE THOMAS W. BROTHERS, JUDGE

For Plaintiff/Appellee:

Helen Sfikas Rogers
Jones & Rogers
Nashville, Tennessee

For Defendant/Appellant:

Thomas E. Watts, Jr.
Pro Se

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# OPINION

This appeal involves another chapter in a lingering, acrimonious dispute between two Nashville lawyers stemming from a failed settlement of a case in federal court. After one of the lawyers abandoned his third-party complaint against the other lawyer for fraudulent misrepresentation, the other lawyer filed a malicious prosecution action in the Circuit Court for Davidson County. When the trial court dismissed the complaint on the ground that it was premature, the prevailing lawyer sought Tenn. R. Civ. P. 11 sanctions against the lawyer whose malicious prosecution claim had been dismissed. The trial court declined to grant sanctions, and the lawyer seeking sanctions has appealed. We have determined that the record supports the trial court's decision not to award sanctions and, therefore, affirm the trial court's decision.

## I.

In mid-1992, Sharon McFarlin obtained a default judgment for approximately $10,000 against Jim and Rose Winfree. On the afternoon of September 17, 1992, she arrived at the Winfrees' home with a moving van and a deputy sheriff armed with an execution authorizing the seizure of the Winfrees' personal property to satisfy her judgment. Faced with immediate loss of their furniture and other possessions, the Winfrees made a hurried telephone call to their lawyer, Thomas E. Watts, Jr.

At that time, Mr. Watts was also representing a corporation in which Mr. Winfree had an interest in a proceeding in the United States District Court for the Middle District of Tennessee. One of the parties in the federal proceeding was represented by Helen S. Rogers, a lawyer who had once practiced with Mr. Watts until their association was dissolved over a financial dispute. On the day before Ms. McFarlin arrived at the Winfrees' home, Mr. Watts received a letter from Ms. Rogers confirming the terms of a settlement of the litigation and indicating that she would shortly have the funds for the settlement in hand.[1] Mr. Watts anticipated that Mr. Winfree's share of this settlement would be sufficient to pay Ms. McFarlin's judgment.

---

[1]Ms. Rogers's letter stated that "[t]he settlement moneys are to be wire transferred into my trust account around the first of next week and I will let you know when we can complete the settlement."

Mr. Watts requested Ms. McFarlin to forego executing on the Winfrees' property and promised her that Mr. Winfree would use the expected federal settlement proceeds to pay her judgment. Ms. McFarlin referred Mr. Watts to her lawyer. Mr. Watts was unable to reach Ms. McFarlin's lawyer by telephone but talked with one of his associates. After receiving Mr. Watts's assurance that he would receive the settlement proceeds within five days, the lawyer telephoned Ms. McFarlin and advised her not to execute on the Winfrees' property because "money is better than furniture." Based on this advice, Ms. McFarlin authorized the lawyer to release the execution. Unbeknownst to Mr. Watts, Mr. Winfree later sought to exempt $7,350 of his personal property from execution.

When Mr. Watts did not receive the settlement proceeds as he expected, he wrote a pointed letter to Ms. Rogers on September 22, 1992 stating that he would disavow the settlement unless the funds were delivered to him by the next day. After he did not receive the funds, Mr. Watts wrote another letter to Ms. Rogers stating that "I do not believe the creditor [Ms. McFarlin] has any claim against me personally, but in the unlikely and unfortunate event that I am sued, of course, I will have no option other than to pass the responsibility on to you, and presumably, you would want to pass it on to your clients." Ms. Rogers responded by asserting that she had never given Mr. Watts a definite payment date.

On October 23, 1992, Ms. McFarlin sued Mr. Watts for negligent misrepresentation in the Sumner County General Sessions Court. The general sessions court awarded Ms. McFarlin a judgment against Mr. Watts, and Mr. Watts pursued a de novo appeal to the circuit court. Once the case reached the circuit court, Mr. Watts filed a third-party complaint against Ms. Rogers, alleging fraud and fraudulent misrepresentation. At the close of his proof at trial, Mr. Watts essentially abandoned his fraud claims and sought permission at trial to amend his third-party complaint to add a negligent misrepresentation claim and to conform his pleadings to the proof. The trial court declined to permit Mr. Watts to amend his third-party complaint and granted a directed verdict dismissing Mr. Watts's fraud and fraudulent misrepresentation claims against Ms. Rogers. The circuit court thereafter awarded Ms. McFarlin a $7,550 judgment against Mr. Watts.

A panel of this court reversed Ms. McFarlin's judgment against Mr. Watts on October 28, 1994. *See McFarlin v. Watts*, 895 S.W.2d 687 (Tenn. Ct. App. 1994). On November 14, 1994, Ms. Rogers filed a malicious prosecution action against Mr. Watts in the Circuit Court for Davidson County based on his third-party complaint that had been dismissed in the Sumner County proceeding.[2] Mr. Watts moved for a summary judgment on the ground that Ms. Rogers's complaint was premature. After the trial court dismissed Ms. Rogers complaint, Mr. Watts requested sanctions against Ms. Rogers under Tenn. R. Civ. P. 11. On July 24, 1995, the trial court denied Mr. Watts's motion for sanctions. This appeal followed.

On March 6, 1995, the Tennessee Supreme Court denied Ms. McFarlin's application to review this court's opinion vacating her judgment against Mr. Watts. On June 9, 1995, Ms. Rogers filed a second malicious prosecution action against Mr. Watts in the Circuit Court for Davidson County. Following a bench trial, the trial court awarded Ms. Rogers an $18,000 judgment against Mr. Watts. A divided panel of this court affirmed the judgment. *See Rogers v. Watts*, No. 01A01-9611-CV-00500, 1997 WL 367477 (Tenn. Ct. App. July 2, 1997), *perm. app. denied* (Tenn. Jan. 20, 1998).

## II.

We must first determine which version of Tenn. R. Civ. P. 11 applies to this proceeding because the Tennessee Supreme Court revised the rule after the conduct giving rise to Mr. Watts's motion for sanctions occurred. Tenn. R. Civ. P. 11 tracked Fed. R. Civ. P. 11 from 1987 until December 1, 1993 when the United States Supreme Court dramatically changed the explicit scope of Fed. R. Civ. P. 11, as well as its certification requirement and available sanctions. The change in the federal rule was brought about by a desire to curb some of the abuses in Rule 11 motion practice in federal courts, *see* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1331, at 4 (Supp. 1998), and by a desire to reduce the number of motions for sanctions filed in federal courts. *See* 2A James W. Moore, et al., *Moore's Federal Practice* ¶¶ 11.01[8], 11.02[1.-2] (2d ed. 1995).

---

[2]Ms. Rogers also filed a motion in the Circuit Court for Sumner County seeking Tenn. R. Civ. P. 11 sanctions against Mr. Watts and his lawyer for the filing of the third-party complaint. This motion was eventually denied on April 27, 1995.

Even though Tennessee's courts had not experienced dramatic increases in the filing of motions seeking Rule 11 sanctions or widespread abuse of these motions, the Tennessee Supreme Court filed an order on February 1, 1995 conforming Tenn. R. Civ. P. 11 with the 1993 version of Fed. R. Civ. P. 11. Its reason for amending Tenn. R. Civ. P. 11 was to prevent the potential for abuse of Tenn. R. Civ. P. 11 sanctions. *See* Tenn. R. Civ. P. 11 advisory comm'n cmt. to 1995 amendment. The Court submitted the proposed rule to the General Assembly in accordance with Tenn. Code Ann. § 16-3-404 (1994). The House of Representatives approved the rule on April 27, 1995,[3] and the Senate followed suit on May 4, 1995.[4] By its own terms, the amended rule took effect on July 1, 1995.

The Tennessee Supreme Court, unlike the United States Supreme Court, provided no direction concerning the application of the amended version of Tenn. R. Civ. P. 11 to pending civil cases.[5] Thus, we must determine whether all or any portion of the 1995 version of Tenn. R. Civ. P. 11 applies to conduct occurring before July 1, 1995. The Tennessee Rules of Civil Procedure themselves do not provide an answer to this question; accordingly, we must look elsewhere.

The only statute purporting to limit the scope of the Tennessee Supreme Court's rulemaking authority is Tenn. Code Ann. § 16-3-403 (1994) which states that "[t]he rules prescribed by the supreme court pursuant to § 16-3-402 shall not abridge, enlarge or modify any substantive right, and shall be consistent with the constitutions of the United States and the state of Tennessee."[6] This provision invokes Tenn. Const. art. I, § 20's protection against retrospective laws. Thus, we must determine whether the 1995 amendments to Tenn. R. Civ. P. 11 are substantive or procedural. *See Kuykendall v. Wheeler*, 890 S.W.2d 785, 787 (Tenn. 1994); *Saylors v. Riggsbee*, 544 S.W.2d 609, 610 (Tenn. 1976). If the amendments are procedural, then they may be applied to all civil cases pending when the amended rule became effective.

---

[3]*See* Resolution of April 27, 1995, House Res. No. 30, 1995 Tenn. Pub. Acts 1353.

[4]*See* Resolution of May 4, 1995, Senate Res. No. 13, 1995 Tenn. Pub. Acts 1207.

[5]The United States Supreme Court's order amending Fed. R. Civ. P. 11 in 1993 specified that the amended version of the rule "shall govern all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending." *See Espinoza v. United States*, 52 F.3d 838, 840 (10th Cir. 1995).

[6]The requirement in Tenn. Code Ann. § 16-3-404 that both legislative chambers approve proposed rules may, as a practical matter, indirectly influence the scope of the Court's rule-making authority. The Court could be hesitant to adopt rules that will not meet with legislative approval.

*See Kee v. Shelter Ins. Co.*, 852 S.W.2d 226, 228 (Tenn. 1993); *Pacific Eastern Corp. v. Gulf Life Holding Co.*, 902 S.W.2d 946, 956 (Tenn. Ct. App. 1995).

Procedural statutes are ones that affect the method or procedure for prosecuting or defending a claim. *See Shell v. State*, 893 S.W.2d 416, 419-20 (Tenn. 1995); *State Dep't of Human Servs. v. Defriece*, 937 S.W.2d 954, 958 (Tenn. Ct. App. 1996). In this context, procedure includes

> the mode or proceeding by which a legal right is enforced, as distinguished from the law which gives or defines the right, and which by means of the proceeding, the court is to administer – the machinery, as distinguished from its product;. . . including pleading, process, evidence, and practice. . .. Practice [is] the form . . . for the enforcement of rights or the redress of wrongs, as distinguished from the substantive law which gives the right or denounces the wrong.

*Saylors v. Riggsbee*, 544 S.W.2d at 610 (quoting *Jones v. Garrett*, 386 P.2d 194, 198-99 (Kan. 1963)).

The 1995 amendments to Tenn. R. Civ. P. 11 contain both substantive and procedural alterations. Substantively, the 1995 amendments broaden the scope of the conduct subject to sanctions and expand the nature of the certifications implicit in an attorney's or party's signature on pleadings, written motions, or other papers. Procedurally, Tenn. R. Civ. P. 11.03 changes decisions to impose sanctions from mandatory to discretionary decisions. Similarly, Tenn. R. Civ. P. 11.03(1)(a) provides a 21-day safe harbor provision intended to reduce the likelihood of sanctions by giving parties an opportunity to correct or withdraw challenged submissions, and Tenn. R. Civ. P. 11.03(2) places new limits on the nature of the sanctions to be imposed.

While we have no Tennessee precedents regarding the application of amended rules to conduct occurring before the amendments became effective, the federal courts have addressed precisely the same question with regard to the 1993 amendments to Fed. R. Civ. P. 11. With regard to sanctionable conduct occurring before the effective date of the amendment, the federal courts have noted that both remanding the cases for consideration under the amended rule and reviewing the trial court's decision using the amended rule's standards would be unjust and impractical. *See Silva v. Witschen*, 19 F.3d 725, 728-29 (1st Cir. 1994).

Because the 1993 amendments to Fed. R. Civ. P. 11 were both substantive and procedural, the federal courts have held that the key consideration is when the sanctionable conduct occurred, not when the motion for sanctions was filed. *See Vanderventer v. Wabash Nat'l Corp.*, 893 F. Supp. 827, 838 (N.D. Ind. 1995). With regard to the substantive aspects of the rule, the federal courts have held that the pre-1993 version of Fed. R. Civ. P. 11 should apply because lawyers and parties should only be charged with knowledge of the version of the rule that was in effect when the paper giving rise to the request for sanctions was filed. *See MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1257 (2d Cir. 1996); *Cunningham v. Waters Tan & Co.*, 65 F.3d 1351, 1361 (7th Cir. 1995); *Land v. Chicago Truck Drivers Union Health and Welfare Fund*, 25 F.3d 509, 516 (7th Cir. 1994); *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994). They have also held, however, that district judges may exercise their newfound discretion contained in the 1993 amendments when the filing giving rise to the request for sanctions preceded the amendments to Fed. R. Civ. P. 11. *See Moore v. Local 569, Int'l Bhd. of Elec. Workers*, 53 F.3d 1054, 1058 (9th Cir. 1995); *Knipe v. Skinner*, 19 F.3d at 78; *Corporate Printing Co. v. New York Typographical Union No. 6,* 886 F. Supp. 340, 343 (S.D.N.Y. 1995); *LaVigna v. WABC Television, Inc.*, 159 F.R.D. 432, 436 (S.D. N.Y. 1995).

The choice of which version of Tenn. R. Civ. P. 11 to apply is not outcome determinative in this case because the conduct Mr. Watts complains of, if found to have been inappropriate, would have been sanctionable under either version of the rule. For the purpose of our analysis, however, we will determine whether Ms. Rogers conduct amounts to a substantive violation of rule using the unamended version of the rule. Thus, like the trial court, we will apply the objective standard of reasonableness contained in the pre-July 1, 1995 version of Tenn. R. Civ. P. 11. *See Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533, 551, 111 S. Ct. 922, 933 (1991); *Andrews v. Bible*, 812 S.W.2d 284, 288 (Tenn. 1991).

Ms. Rogers's conduct must be analyzed in light of the circumstances known to her at the time she filed her first malicious prosecution complaint. *See Krug v. Krug*, 838 S.W.2d 197, 205 (Tenn. Ct. App. 1992). Accordingly, we must pursue answers to the following two questions: first, whether Ms. Rogers filed her first malicious prosecution complaint believing it to be "well grounded in fact and . . . warranted by existing law or a good faith argument for extension, modification, or

reversal of existing law" and second, whether Ms. Rogers filed this complaint "for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

These inquires call for the trial courts to make fact-intensive close calls. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 404, 110 S. Ct. 2447, 2460 (1990). Accordingly, appellate courts use the deferential abuse-of-discretion standard when reviewing a trial court's decision with regard to the imposition of sanctions. *See Alside Supply Ctr. v. Smith Heritage Siding Co.*, No 03A01-9702-CH-00069, 1997 WL 414982, at *1 (Tenn. Ct. App. July 25, 1997) (No Tenn. R. App. P. 11 application filed); *Berger v. Ratner*, No. 02A01-9604-CV-00077, 1997 WL 170327, at *3 (Tenn. Ct. App. Apr. 11, 1997) (No Tenn. R. App. P. 11 application filed); *Krug v. Krug*, 838 S.W.2d at 205. Under this standard of review, a trial court abuses its discretion if its decision is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. at 405, 110 S. Ct. at 2461. An erroneous decision with regard to the imposition of Tenn. R. Civ. P. 11 sanctions will not be second-guessed on appeal unless it has caused great injustice and injury to the complaining party. *See Binkley v. Cannon*, No. 01A01-9408-CH-00401, 1995 WL 66927, at *5 (Tenn. Ct. App. Feb. 17, 1995) (No Tenn. R. App. P. 11 application filed).

## III.

The remaining issue to be decided is whether Ms. Rogers engaged in sanctionable conduct when she filed her first malicious prosecution claim against Mr. Watts. Mr. Watts insists that Ms. Rogers should have known that her first complaint was not warranted by existing law because his third-party claim in *McFarlin v. Watts* had not been finally terminated in her favor at the time she filed her complaint. Ms. Rogers responds that Tenn. R. Civ. P. 11 sanctions were not warranted because she eventually succeeded with her second malicious prosecution claim against Mr. Watts.

The reasonableness of Ms. Rogers's conduct must be established in light of the circumstances existing when she filed her first malicious prosecution complaint. Accordingly, the later success of her second malicious prosecution complaint has no

bearing on our consideration of whether the filing of her first complaint was sanctionable. As the law stood at the time she filed her first complaint, Ms. Rogers, like any other reasonably competent lawyer, should have known that she would be required to prove (1) that Mr. Watts filed his third-party complaint in *McFarlin v. Watts* without probable cause, (2) that Mr. Watts acted with malice when he filed his third-party complaint against her, and (3) that the final disposition of Mr. Watts's third-party complaint was favorable to her. *See Roberts v. Federal Express Corp.*, 842 S.W.2d 246, 247-48 (Tenn. 1992); *Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn. 1992) (both cases holding that the three essential elements of a malicious prosecution claim are (1) that the defendant brought the prior suit without probable cause, (2) that the defendant brought the prior suit with malice, and (3) that the prior suit was terminated in the plaintiff's favor).

The "favorable termination" element of a malicious prosecution claim can be satisfied by a showing other than that the defendant's underlying claim was dismissed as a result of a final judgment on the merits. Any dismissal indicating the innocence or nonliability of the malicious prosecution plaintiff will suffice as a favorable termination. *See Sewell v. Par Cable, Inc.*, No. 87-266-II, 1988 WL 112915, at *3 (Tenn. Ct. App. Oct. 26, 1988) (No Tenn. R. App. P. 11 application filed); *see also Villa v. Cole*, 6 Cal. Rptr. 2d 644, 648 (Ct. App. 1992); Restatement (Second) of Torts § 674 cmt. j (1977); 1 Fowler V. Harper, et al., *The Law of Torts* § 4.4 (3d ed. 1996). Accordingly, the Tennessee Supreme Court has held that the abandonment or withdrawal of an allegedly malicious claim is sufficient to establish a final and favorable termination as long as the abandonment or withdrawal was not accompanied by a compromise or settlement or was not undertaken in order to refile the same claim in another forum. *See Christian v. Lapidus*, 833 S.W.2d at 74.

When Ms. Rogers filed her first malicious prosecution claim against Mr. Watts, she knew:

(1)     that Mr. Watts had filed a third-party complaint against her in *McFarlin v. Watts* alleging that she has committed fraud or fraudulent misrepresentation;

(2)     that the trial court had denied Mr. Watts's motion at the close of the evidence to conform his third-party complaint to the proof and to amendment his third-party complaint to add a claim of negligent misrepresentation;

(3)     that the trial court had granted her motion of a directed verdict dismissing Mr. Watts's third-party complaint with prejudice;

(4)     that Mr. Watts had appealed from Ms. McFarlin's verdict against him and from the trial court's denial of his motion to amend his complaint but that he had not specifically appealed from the directed verdict dismissing his third-party claims for fraud or fraudulent misrepresentation;[7] and

(5)     that the Court of Appeals had affirmed the trial court's judgment.

Based on these facts, Ms. Rogers, or any other reasonably competent lawyer, could legitimately have concluded that Mr. Watts's claims based on fraud and fraudulent misrepresentation had been terminated in Ms. Rogers's favor.  Mr. Watts had abandoned them at trial by filing the motion to amend, and the trial court had granted a directed verdict dismissing them. In addition, any reasonably competent lawyer would have concluded that the trial court's dismissal of Mr. Watts's fraud claims was final because Mr. Watts had not taken issue on appeal with the dismissal of these claims.  By failing to raise this issue on appeal, Mr. Watts placed the issue of the trial court's dismissal of his third-party fraud claims beyond the reach not only of the Court of Appeals but also of the Tennessee Supreme Court.  *See* Tenn. R. App. P. 13(b).  Thus, it was of no consequence that Ms. McFarlin's Tenn. R. App. P. 11 application had not been disposed of when Ms. Rogers filed her first malicious prosecution complaint.  By virtue of his failure to take issue in the Court of Appeals with the trial court's directed verdict dismissing his fraud claims, Mr. Watts had lost his opportunity to raise these issues in the Tennessee Supreme Court.

In light of these facts, Ms. Rogers, or any other reasonably competent lawyer, could have concluded that Mr. Watts's claims based on fraud and fraudulent misrepresentation had been finally concluded in Ms. Rogers's favor when she filed her first malicious prosecution action.  This being the case, the trial court could have properly declined to impose Tenn. R. Civ. P. 11 sanctions for Ms. Rogers's first malicious prosecution complaint because it was well-grounded in fact and supported by existing law.

_____

[7]Mr. Watts conceded in the second malicious prosecution proceeding that he did not appeal from the trial court's decision to grant the directed verdict dismissing his claims against Ms. Rogers for fraud or fraudulent misrepresentation.

-10-

## IV.

We affirm the judgment dismissing Mr. Watts's request for Tenn. R. Civ. P. 11 sanctions against Ms. Rogers and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Thomas E. Watts, Jr., and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

_____
SAMUEL L. LEWIS, JUDGE