Richard J. ROBERTS, and Elizabeth
A. Roberts, Plaintiffs–Appellants,

v.

**FEDERAL EXPRESS CORPORATION,**
Defendant–Appellee.

Supreme Court of Tennessee,
at Jackson.

Sept. 14, 1992.

Larry E. Parrish, Robert P. Campbell, Jr., Memphis, for plaintiffs-appellants.

Charles W. Hill, Robert B.C. Hale, Waring Cox, Memphis, Robert C. Von Ohlen, Jr., John B. Austin, Adler, Kaplan & Begy, Chicago, Ill., James R. Mulroy, Federal Exp. Corp., Memphis, for defendant-appellee.

OPINION

DROWOTA, Justice.

This malicious prosecution action involves the question of whether Defendant had probable cause to institute criminal proceedings against Plaintiff. The trial court granted Defendant's motion for summary judgment, finding, on the undisputed facts, that Defendant had probable cause for instituting prosecution. In so holding, the trial court recognized that, under existing precedent, the ultimate determination of probable cause is a question of law for the court. We conclude that the existence of probable cause is a question (1) unrelated to a prosecutor's subjective belief, and (2) properly decided by a jury.

Plaintiff Richard Roberts[1] worked for Defendant Federal Express Corporation for nine years, compiling an exemplary job record. As a maintenance mechanic, his duties included working on Defendant's concealed security cameras.

Defendant's sorting process sometimes results in contents being spilled from mutilated packages. Plaintiff had often picked up spilled contents and turned them in, although not necessarily on the same day. On one occasion he turned in a box of 13 diamond rings. Defendant has also experienced problems with employee theft. Plaintiff had, in the past, helped Defendant uncover employee dishonesty.

On February 1, 1988, while at work, Plaintiff was taking medication for severe back pain. Although fellow employees urged him to go home, he continued to work. At some point while on the job, Plaintiff discovered a gold ring, an aerosol can, a videotape, a silver spoon, chocolate candy, and a dildo on Defendant's premises. He placed the videotape in a sleeve, and the other articles in the pockets of his jacket.

Sometime later that day, apparently affected by the medication, Plaintiff had a fellow employee take him to a break area. On the way there, Plaintiff told this employee of the items in his jacket and that he needed to turn them in. Upon reaching the break area, Plaintiff slept for the remainder of his shift.

At approximately 5:00 p.m. at the end of his shift, Plaintiff was awakened by another employee. Plaintiff, still drowsy, was then driven to an employee exit that contained an electronic screening device. Plaintiff went to this exit despite holding special permission to leave the premises via locations not equipped with surveillance devices.

As Plaintiff was passing through one of these screening devices the alarm sounded.

Plaintiff backed up and removed a set of keys and returned through the device. The alarm sounded a second time. Plaintiff then removed his jacket and a knife he had in his possession and passed back through the screening device. The alarm did not sound. Allegedly, that's when Plaintiff realized that he had left certain items that he had picked up from mutilated packages in his pockets. Plaintiff contends that he was disoriented and forgot the items were in his jacket due to medication he had been taking. Plaintiff appeared drowsy to the security guard.

Plaintiff explained to the security officers that he had found the items and forgot to turn them in and had no intention of stealing them. Plaintiff was retained for approximately four hours and questioned for about 30 to 45 minutes. The officers took Plaintiff's statement concerning the incident during this period. In addition, they discussed the valium tablets and Plaintiff took two security officers over to the location where he found the items. Thereafter, Plaintiff was released and given a suspension.[2]

On February 10, 1988, Defendant caused an arrest warrant to be issued charging Plaintiff with grand larceny. A Shelby County Grand Jury later returned a no true bill.

When Plaintiff brought this action for malicious prosecution, the trial court granted summary judgment for Defendant, finding Defendant had probable cause to institute the criminal proceedings. This finding was made in procedural conformance with existing precedent mandating that the ultimate determination of probable cause is a question of law for the court. The Court of Appeals affirmed.

## I.

■ In order to establish the essential elements of malicious prosecution, a plain-

---

1. Plaintiff Elizabeth Roberts's claim for loss of consortium is not an issue in this appeal.

2. Prior to February 1, 1988, Plaintiff had been provided a set of plans indicating Defendant's intent to use an electronic screening device for entering and exiting employees. Plaintiff was familiar with metal detectors and their design. He had been provided the set of plans because his job responsibilities potentially included maintaining these detectors. Additionally, Plaintiff was aware that the screening devices would be operable beginning February 1, 1988.

tiff must prove that (1) a prior suit or judicial proceeding was instituted without probable cause, (2) defendant brought such prior action with malice, and (3) the prior action was finally terminated in plaintiff's favor. *See Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn.1992); *Lewis v. Allen*, 698 S.W.2d 58, 59 (Tenn.1985). The present case concerns the element of probable cause.

■■■■ Probable cause is established where "facts and circumstances [are] sufficient to lead an ordinarily prudent person to believe the accused was guilty of the crime charged." *See Logan v. Kuhn's Big K Corp.*, 676 S.W.2d 948, 951 (Tenn.1984); *Lewis v. Williams*, 618 S.W.2d 299, 303 (Tenn.1981). However, this Court has also stated that "[t]he prosecutor must in good faith have honestly believed the accused was guilty of the crime charged." *See Logan*, 676 S.W.2d at 951; *Lewis*, 618 S.W.2d at 303. We now conclude that the existence of probable cause does not depend on the subjective mental state of the prosecutor.

■■ A malicious prosecution is one brought in the absence of probable cause, and with malice. These two elements are distinct. Whereas malice concerns the subjective mental state of the prosecutor, appraisal of probable cause necessitates an objective determination of the reasonableness of the prosecutor's conduct in light of the surrounding facts and circumstances. *Accord Sheldon Appel Co. v. Albert & Oliker*, 47 Cal.3d 863, 765 P.2d 498, 506, 254 Cal.Rptr. 336, 344–45 (1989); Dobbs, *Belief and Doubt in Malicious Prosecution and Libel*, 21 Ariz.L.Rev. 607 (1979) (rejecting Restatement (Second) of Torts § 662 comment c (1977)).

■■ Properly defined, probable cause requires only the existence of such facts and circumstances sufficient to excite in a reasonable mind the belief that the accused is guilty of the crime charged. While a mind "beclouded by prejudice, passion, hate and malice" is not "reasonable," *see Poster v. Andrews*, 183 Tenn. 544, 554, 194 S.W.2d 337, 341 (1946), the question whether a particular prosecutor is so motivated goes only to the element of malice. Probable cause is to be determined solely from an objective examination of the surrounding facts and circumstances.

## II.

We now review whether the question of probable cause should be decided by the court or jury.

The existence of probable cause has long been characterized as a mixed question of law and fact:

> The facts from which probable cause is to be deduced are to be found by the jury; the deduction, as matter of law, is to be made by the court. The rule by which the court determines whether there is probable cause or not, is to look at the facts as found by the jury, and from these determine whether a reasonable man, in view of the facts so found, would have instituted the suit.

*Memphis Gayoso Gas Co. v. Williamson*, 56 Tenn. 314, 343 (1872). The ultimate determination is thus taken from the jury, even though "the existence of probable cause, which involves only the conduct of a reasonable man under the circumstances, ... does not differ essentially from the determination of negligence." W. Keeton, *Prosser and Keeton on the Law of Torts*, § 119, at 882 (5th ed. 1984).

Justification for this anomaly has been attributed to "the apprehension of the courts that if the question of probable cause were left to juries, they might not sufficiently safeguard the rights of defendants, and thus might discourage the performance of a public duty of bringing complaints against persons they believe to have committed offenses." Annotation, *Probable Cause or Want Thereof, In Malicious Prosecution Action, As Question of Law for Court or of Fact for Jury*, 87 A.L.R.2d 183, 186–87 (1963). However, our jury system "occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Dimick v. Schiedt*, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935). This historical "apprehension" does not withstand such

scrutiny; accordingly, the determination of the reasonableness of a defendant's conduct should be made by a jury. To the extent our cases hold to the contrary, *e.g., Logan,* 676 S.W.2d at 951; *Lewis,* 618 S.W.2d at 300; *Cohen v. Cook,* 224 Tenn. 729, 731, 462 S.W.2d 499, 500 (1970); and *Memphis Gayoso,* 56 Tenn. at 343, they are overruled.

■ Under the facts presented, reasonable minds could differ as to whether probable cause existed for bringing charges against Plaintiff. The trial court, in line with existing procedural precedent, resolved the issue against Plaintiff and granted summary judgment for Defendant. The Court of Appeals affirmed. Because we now hold that where reasonable minds can differ as to the existence of probable cause a jury is to decide the issue, the judgments of the lower courts must be reversed.

Two final points must be addressed. First, Plaintiff asserts that a reasonable preprosecution investigation would have revealed certain exculpatory facts. Where such an allegation is made and there is evidence to support it, the jury is to determine the facts a reasonable investigation would have disclosed, and then base its probable cause determination considering those facts.

■ Second, Plaintiff asserts that the grand jury's refusal to indict creates a presumption that the prosecution was initiated without probable cause. We disagree. Termination of the prior proceeding in Plaintiff's favor has no bearing on whether probable cause existed at the time prosecution was initiated, and, where relevant, the jury shall be specifically so instructed.

The judgments below are reversed and the case remanded for proceedings consistent with this opinion. Costs of this appeal are taxed to Defendant.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.