**Thomas HILL, Plaintiff,**

**Howard McPherson, Individually, Plaintiff–Appellant,**

v.

**Frank WHITE; Bettie White; John Vosberg; Lawrence D. Wilson, Individually, Defendants–Appellees.**

No. 98–5860.

United States Court of Appeals, Sixth Circuit.

Argued: June 15, 1999

Decided and Filed: Aug. 13, 1999

Donald S. Caulkins (argued and briefed), Caulkins & Caulkins, Franklin, TN, for Appellant.

Irwin B. Venick (argued and briefed), Dobbins & Venick, G. Kline Preston, IV (argued and briefed), Nashville, TN, for Appellees.

Before: MARTIN, Chief Judge; JONES and SUHRHEINRICH, Circuit Judges.

**429**

## OPINION

BOYCE F. MARTIN, JR., Chief Judge.

Frank and Bettie White, John Vosberg, and Lawrence Wilson were granted summary judgment in this diversity action alleging malicious prosecution arising from the Whites and Vosberg's filing of state court actions against Howard McPherson. Wilson, an attorney, filed the state court actions against McPherson on behalf of the Whites and Vosberg. We affirm.

In 1996, the Whites signed a franchise agreement with ReMax of Kentucky/Tennessee, under which they could provide real estate services in Davidson, Williamson, Sumner, and Rutherford Counties in Tennessee. In 1987, Vosberg signed a franchise agreement with ReMax of Kentucky/Tennessee under which he could provide real estate services in a portion of Nashville and Davidson County, Tennessee. At those times, McPherson, Chairman of the Board of ReMax of Kentucky/Tennessee, and Hill, Chief Executive Officer of ReMax of Kentucky/Tennessee, were the sole shareholders of ReMax of Kentucky/Tennessee.

The Whites met with McPherson prior to signing their franchise agreement. Hill made a presentation to both the Whites and Vosberg before they signed their respective agreements. McPherson was familiar with the content of the presentation. One of the most important issues that the presentation addressed was the regional advertising fund to which all franchisees were required to contribute.

The franchise agreements which the Whites and Vosberg signed were similar in all respects, except for the franchise itself. The agreements contained numerous provisions which addressed the obligations of both parties, including the obligation of all franchisees to contribute to a regional advertising fund.[1]

1. The advertising provision reads as follows: A $50.00 fee for each associate under contract, to be used in the regional institutional

McPherson signed the franchise agreements above the word "ReMax," but without any designation of his corporate capacity. Section nineteen of the franchise agreement read:

19. Corporate Ownership

A. This Agreement is personal to the individual(s) singing hereunder as Franchisee. In the event that Franchisee desires to do business as a corporation, ReMax will give its written consent to do so and to assign this agreement to such corporation only under the following terms and conditions:

1. All individuals executing this Agreement shall remain personally liable for the performance of all obligations under this Agreement, irrespective of the formation of a corporation.

In 1990, the Whites and Vosberg became concerned that the regional advertising funds were not being spent in accordance with either the terms of the franchise agreement, ReMax policy, or the verbal representations made to them by ReMax representatives. The Whites and Vosberg were also concerned that ReMax was not enforcing the terms of the franchise agreement equally because, they allege, another Nashville area franchisee was allowed to be delinquent in the payment of his regional advertising fees.

The Whites and Vosberg discussed these concerns with their attorney, Wilson, in 1990. Wilson investigated their allegations and determined that: (1) McPherson did not designate his corporate capacity when he signed the franchise agreement; (2) the language of the agreement arguably bound the parties to the agreement individually;

and (3) the stock of ReMax was held solely by McPherson and Hill. Wilson advised the Whites and Vosberg that they had valid legal claims in tort and contract against ReMax, as well as against McPherson and Hill in their individual capacities. The Whites and Vosberg stated that they relied on the advice of Wilson in initiating a state court action against ReMax, McPherson, and Hill.

Wilson filed a state court complaint[2] on behalf of the Whites and Vosberg which alleged breach of contract, fraud, breach of fiduciary duty, conversion, and violation of the Tennessee Consumer Protection Act, based on the alleged misuse of the regional advertising fund for salary and overhead and the failure to collect advertising funds from other franchisees.

McPherson and Hill filed motions for summary judgment prior to the state trial, which the state court denied. Before the case went to the jury, the state court dismissed all the claims against McPherson except the Whites' Tennessee Consumer Protection Act claim. The jury returned a verdict for McPherson on the Tennessee Consumer Protection Act claim.

McPherson then filed a claim for malicious prosecution against the Whites, Vosberg, and Wilson, in federal court pursuant to diversity jurisdiction, alleging that they lacked probable cause to initiate their state court lawsuit against him. The Whites, Vosberg, and Wilson filed motions for summary judgment. The district court referred the matter to a magistrate. The magistrate returned a report and recommendation granting the Whites, Vosberg, and Wilson's motions for summary judgement. McPherson objected to the magistrate's report and recommendation. The

---

advertising fund, such fund to be spent for institutional advertising. Such fees shall be remitted monthly whether or not franchisee has received payment from the sales associates. The fee will, from time to time, increase, so as to maintain the effectiveness of the fund's operation as advertising costs may be expected to rise over the course of

this agreement. All funds paid for institutional advertising becomes the property of the institutional advertising fund and under no circumstances will be refunded.

2. The terms of the franchise agreement provided that any disputes would be settled under Tennessee law.

district court conducted a *de novo* review and adopted the magistrate's recommendation in full.

McPherson timely filed an appeal to this Court. He appeals the district court's grant of summary judgment with respect to the malicious prosecution claims arising from the underlying state court actions for the breach of contract, fraud, conversion, and misrepresentation claims, but not for breach of fiduciary duty or violation of the Tennessee Consumer Protection Act.

This Court reviews the district court's award of summary judgment *de novo*. *Monette v. Electronic Data Sys.*, 90 F.3d 1173, 1176 (6th Cir.1996). Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether summary judgment is proper, we view the facts and any reasonable inferences drawn from those facts in a light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). However, the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. *Monette*, 90 F.3d at 1177. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Because this is a diversity action, Tennessee law governs McPherson's malicious prosecution claim. *Erie v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Furthermore, the parties to the franchise agreement agreed that Tennessee law would govern any dispute arising out of the franchise agreement.

■ Under Tennessee law, to prevail on a claim for malicious prosecution, a plaintiff must establish the following elements: (1) the defendant instituted a prior action without probable cause; (2) the defendant brought such action with malice; and (3) the prior action was terminated in the plaintiff's favor. *Roberts v. Federal Express Corp.*, 842 S.W.2d 246, 247–48 (Tenn.1992).[3] All parties concede that the prior action, the Whites and Vosberg's state tort and contract action against McPherson, was terminated in McPherson's favor. Thus, McPherson has established the third prong of his malicious prosecution case, leaving only the probable cause and malice prongs in dispute.

■ Probable cause requires only the existence of such facts and circumstances sufficient to excite in a reasonable mind the belief that the accused is guilty of the crime. *Roberts*, 842 S.W.2d at 248. The existence of probable cause does not depend upon a subjective assessment of the defendant's mental state, but instead is "determined solely from an objective examination of the surrounding facts and circumstances." *Id.*

■ As the plaintiff, McPherson has the "burden of proving the absence of probable cause." *Christian v. Lapidus*, 833 S.W.2d 71, 74 (Tenn.1992). "In order to establish the lack of probable cause in instituting a civil proceeding, it must appear that the suit was filed primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based." *Buda v. Cassel Bros., Inc.*, 568 S.W.2d 628, 631–32 (Tenn.Ct.App.1978).

*Morat v. State Farm Mut. Auto. Ins. Co.*, 949 S.W.2d 692, 695 (Tenn.Ct.App.1997). In Tennessee, a malicious prosecution claim is available for a wrongfully pursued civil action. *See Peerman v. Sidicane*, 605 S.W.2d 242, 245 (Tenn.Ct.App.1980).

---

**3.** Several of the cases cited involve malicious prosecution claims in which the underlying proceeding was criminal, rather than civil, in nature. However, Tennessee courts have noted that "the same general rules and limitations apply to an action founded upon a civil proceeding, vis-a-vis criminal proceedings."

Where, however, arrest, trial, and exoneration are shown, and the plaintiff testifies of his own innocence or guilt or the appearance of guilt, the burden shifts to the defendant, requiring him to produce for evaluation all of the facts and circumstances which he claims as justification for the prosecution. *Kerney v. Aetna Cas. & Sur. Co.*, 648 S.W.2d 247, 252 (Tenn.Ct. App.1982).

The essence of McPherson's appeal is that there did not exist such facts and circumstances as to "excite in a reasonable mind" the belief that he, individually, as an officer and shareholder of ReMax, was guilty of breach of contract, fraud, conversion, and misrepresentation. Therefore, he argues, the Whites, Vosberg and Wilson lacked probable cause and must have had "a purpose other than that of securing the proper adjudication of the claim in which the proceedings were based" in bringing the lawsuit against him as an individual.

■ The Whites and Vosberg had probable cause to sue McPherson. In malicious prosecution actions, advice of counsel to the effect that there is a reasonable chance of recovery on a claim can establish probable cause. *See Sullivan v. Young*, 678 S.W.2d 906, 911 (Tenn.Ct.App.1984). However, to invoke the defense of advice of counsel, the defendant must have disclosed to his attorney all the material facts within his knowledge and all facts which he could have ascertained by reasonable diligence. *Id.* at 911–12.

There was no allegation that the Whites or Vosberg misstated or withheld any facts from Wilson. Furthermore, they sought an explanation for the manner in which the regional advertising fund was being spent from Hill on numerous occasions and were either not allowed to speak with him, or were not provided with a satisfactory explanation. In making the determination to sue McPherson in his individual capacity, they disclosed to their attorney, Wilson, that McPherson was a corporate director and majority shareholder of ReMax Kentucky/Tennessee. They provided Wilson with their franchise agreements, which contained arguably ambiguous language about personal liability in section nineteen, and which McPherson signed without designating his corporate capacity.

Because they consulted their attorney who advised them that they had a reasonable chance of recovery against McPherson in his individual capacity, and there is no evidence that they withheld facts that they knew or could have ascertained, it appears the franchisees had probable cause to institute an action against McPherson individually. Because McPherson cannot establish that the franchisees instituted an action against him without probable cause, this Court holds that the district court appropriately granted summary judgment for the Whites and Vosberg on McPherson's malicious prosecution claim.

■ As for the claim against Wilson, generally an attorney is not liable in an action for malicious prosecution where he has acted in good faith in the prosecution of his client's rights. *Evans v. Perkey*, 647 S.W.2d 636, 641 (1982). However, an attorney who knowingly prosecutes a groundless action to accomplish some evil purpose of his client may be held accountable in an action for malicious prosecution. *Id.* For a malicious prosecution action against an attorney to be successful, it is usually necessary to allege that the defendant did something more than simply file a lawsuit.

■ Wilson brought a suit on behalf of his clients against McPherson individually using three theories of liability: (1) McPherson did not designate his corporate capacity when he signed the franchise agreement; (2) the language of the agreement arguably bound the parties to the agreement individually; and (3) McPherson closely held ReMax. Wilson had as evidence of these three theories: (1) the franchise agreements which McPherson signed, without designating his corporate capacity, above the word "Remax," (2) Sec-

tion 19(A)(1) of the franchise agreement which read, "**All individuals** executing this Agreement shall remain **personally liable** for the performance of all obligations under this Agreement, irrespective of the formation of a corporation," (emphasis added) and (3) the fact that McPherson was the majority shareholder of Remax and one of only two total shareholders.

Regardless of whether Wilson was likely to succeed in a proceeding against McPherson individually, we hold that his suit against McPherson can hardly be characterized as "groundless," *Evans*, 647 S.W.2d at 641, or without probable cause. Wilson had three legal theories of McPherson's personal liability and specific evidence to back up those theories. Under Tennessee law, corporate officers may be held individually liable for torts committed against third parties. *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 590 (Tenn.Ct.App.1980). There are no allegations that Wilson filed the action without making reasonable inquiry into the factual and legal basis of the suit. Before filing against McPherson individually, Wilson consulted with his clients and others familiar with the case, reviewed the franchise agreements and ReMax promotional materials which his clients provided to him, and researched the legal issues involved.

While his likelihood of success at trial against McPherson individually may have been slim, his actions do not appear to rise to the level contemplated in a malicious prosecution action. In *Peerman v. Sidicane*, 605 S.W.2d 242, 245 (Tenn.Ct.App. 1980), for example, a malicious prosecution claim against an attorney withstood a motion to dismiss where the attorney made allegations in a complaint which were not based on any information given to him by his client and prosecuted a groundless appeal without his client's consent. Wilson's actions do not rise to a comparable level. Therefore we hold that Wilson had probable cause to file a lawsuit against McPherson individually.

Furthermore, this Court holds that the defendants brought the state action against McPherson without malice. The element of malice generally addresses the subjective mental state of the defendant. *Roberts*, 842 S.W.2d at 248. However, the existence of malice may be inferred from the fact that a lawsuit was brought without probable cause. *Lewis v. Williams*, 618 S.W.2d 299, 303 (Tenn. 1981). Tennessee courts have also held that a showing of a lack of probable cause gives rise to a rebuttable presumption of malice. *Sullivan*, 678 S.W.2d at 911 (Tenn.Ct.App.1984). Thus, even if McPherson established lack of probable cause, which he did not, the Whites, Vosberg, and Wilson would still be able to rebut the presumption of malice by showing that they did not instigate the lawsuit with improper motives.

McPherson cites no direct evidence of malice in pursuing his malicious prosecution claim, instead he relies entirely upon the inference of malice which may arise when a lack of probable cause is demonstrated. Because McPherson has not established that the defendant lacked probable cause in filing their initial lawsuit, no inference of malice arises.

Moreover, the Whites and Vosberg stated in their respective affidavits that they honestly believed that they were entitled to the relief they sought in the original proceeding, and there is no evidence to the contrary. Furthermore, there is no evidence on the record suggesting that Wilson acted in any way but in good faith to prosecute his clients' claims. Wilson also stated in his affidavit that his only purpose in bringing the original action was to adjudicate the claims asserted by his clients and that he was not motivated by malice in any way. Therefore, the district court appropriately granted summary judgment because there is no evidence in the record that the Whites, Vosberg, or Wilson lacked probable cause or acted with malice in bringing the law suit

against McPherson in his individual capacity. AFFIRMED.