IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 24, 2011 Session

**JAMES COLEMAN**

v.

**LAUDERDALE COUNTY, TENNESSEE, ET AL. STEVE SANDERS,
SHERIFF OF LAUDERDALE COUNTY; AND HARRY R. HOPKINS,
JR., DEPUTY SHERIFF OF LAUDERDALE COUNTY**

Appeal from the Circuit Court of Lauderdale County
No. 6311   Joseph H. Walker, III, Judge

No. W2011-00602-COA-R3-CV - Filed February 15, 2012

This is a malicious prosecution case arising out of a dispute between neighbors. A dispute arose when the plaintiff neighbor hired a tree service to trim the branches of a tree near the border between the two neighbors' properties. After a confrontation, the police were called. After they arrived, the police cited both neighbors on charges of disorderly conduct. After the charges against the plaintiff neighbor were dismissed, he filed this malicious prosecution action against the defendant county and two of the police officers involved. The trial court granted summary judgment in favor of the defendants. The plaintiff neighbor now appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

C. Michael Robbins, Covington, Tennessee for Plaintiff/Appellant, James Coleman

J. Thomas Caldwell, Ripley, Tennessee for Defendant/Appellees, Lauderdale County, TN, Sheriff Steve Sanders, and Deputy Sheriff Harry R. Hopkins

# OPINION

## FACTS AND PROCEEDINGS BELOW

Plaintiff/Appellant James Coleman ("Coleman') is a resident of Lauderdale County, Tennessee. He and his wife, Martha Coleman, have resided in their home in Ripley, Tennessee since 1991.

The Colemans' property is adjacent to the home of Mrs. Coleman's brother, Lynnco Smith ("Smith"). The record does not indicate how or why Coleman and Smith ended up living next-door to one another; the friction between them apparently dates back to 1959. Most of the disputes between them did not involve a physical altercation.[1] However, according to Coleman, Smith has threatened to take him to court, take everything he owns, and put him out on the street. In the months leading up to the incident that is the subject of this lawsuit, several incidents occurred in which the police were called.

In the first incident, in May 2008, a boundary dispute erupted over the placement of Coleman's garage. At that time, Smith allegedly threatened to sue Coleman and take everything Coleman owned. Defendant/Appellee Steve Sanders ("Sanders"), the Sheriff for Lauderdale County, was called to the scene at that time. Sanders observed at that time that Coleman had a gun, and learned about the longstanding problems between Smith and Coleman.

Two days later, Mrs. Coleman observed Smith on the Colemans' property carrying a claw hammer and acting in a manner that she perceived to be threatening. She went outside and told Smith to get off their property. Again, the police were called and those responding again included Sanders. Mrs. Coleman was arrested for aggravated assault. The same day, a licensed surveyor came and established the boundary line between the parties' tracts of land.

The third incident occurred several months later on September 10, 2008. On that occasion, Smith called police officer Herman Simpson to come out to his home. The call apparently involved the ongoing tree dispute with Coleman; the police advised Smith to get a warrant for vandalism.

On approximately September 23, 2008, two days prior to the incident that is the subject of this lawsuit, Coleman hired tree trimmer Clint Holmes ("Holmes") to trim a pecan tree. The tree was located on Smith's property, but Coleman wanted Holmes to trim some branches

---

[1] However, the record includes Coleman's description of an incident several years prior to the incident that is the subject of this case, in which Smith allegedly choked Mrs. Coleman.

that were hanging over the fence separating the parties' properties. After Holmes trimmed the pecan tree, Smith went to Holmes's home and told him that he "couldn't be trimming on" the tree.

The incident that gave rise to the instant lawsuit occurred two days later, on September 25, 2008. Coleman again called tree trimmer Holmes, this time to trim the branches of a black walnut tree growing on or near the boundary line between Smith's and Coleman's property. Coleman wanted the black walnut branches trimmed because they were hanging over Coleman's garage. When Holmes began trimming the branches, Coleman's wife, two daughters, and grandson were outside. According to Coleman, Smith began "hollering" at Holmes, who was up in the tree. Coleman retrieved his revolver, put it in a holster around his waist, and went outside. Apparently Coleman did not engage Smith directly, but instead stood near the tree where Holmes was perched and told Holmes repeatedly to continue trimming the tree branches, while wearing the holster with the revolver in it.

At some point, Coleman went inside his home and called 9-1-1, asking for police to be sent to his home. In the call, Coleman informed the dispatcher that he had a gun, and that he was licensed to have a gun. The dispatcher told Coleman to leave the gun in the house. When he concluded the call with the dispatcher, before he went back outside, Coleman left his gun on his screened-in porch.

The police officers who arrived included Defendant/Appellee Deputy Harry Hopkins ("Hopkins") and Officer Mark Crook ("Crook"). After talking to both Smith and Coleman, the police officers made some phone calls, including one to Sanders, who knew the parties and their history from the earlier disputes. Crook told Sanders that Coleman and Smith were "back into it over some tree limbs being cut" and that Coleman had had a weapon, but it had been secured. Based on this, the officers believed that Coleman should be cited; Sanders told them to "cite both of them if you cite one." The officers issued citations to both Coleman and Smith for disorderly conduct, and both were summoned to court the next day. The citation issued to Coleman read as follows:

> On 09-25-08 Received a call to [Coleman's address] through 911 that there was a disturbance between Mr. James Coleman and Mr. Linko [sic] Smith. Received call 1755 hrs and arrived at 1800 hrs. The two subjects were upset about Mr. Coleman triming [sic] a tree that is on the property line of both subjects['] property and called 911 to report it per Sheriff Sanders this is an ongoing problem & to cite to court.

Several days later, the charges were dismissed with costs taxed to the state, without any evidence or testimony.

On May 20, 2009, Coleman filed the instant lawsuit in the Circuit Court of Lauderdale County against Defendant/Appellee Lauderdale County, as well as Deputy Sheriff Hopkins and Sheriff Sanders (collectively "Defendants"). The complaint alleged malicious prosecution, based on the charge filed against Coleman of disorderly conduct in violation of Tennessee Code Annotated § 39-17-305.[2] An Answer on behalf of the Defendants was filed, denying liability. Discovery ensued.

On November 19, 2010, Coleman filed a motion for partial summary judgment on the issue of liability. On November 23, 2010, the Defendants filed a cross-motion for summary judgment, with a supporting memorandum of law. Coleman subsequently filed a response in opposition to the Defendants' motion for summary judgment. The record does not include a response by the Defendants to Coleman's initial motion for partial summary judgment.[3]

On February 11, 2011, the trial court issued an Order referencing both parties' summary judgment motions. After reviewing the undisputed facts and the essential elements of a cause of action for malicious prosecution, the order focused on the requirement that the claimant establish that the prior legal proceeding was terminated in the claimant's favor. The order cited *Parrish v. Marquis*, 172 S.W.3d 526 (Tenn. 2005), for the proposition that if a "termination does not relate to the merits-reflecting on neither innocence of nor responsibility for the alleged misconduct – the termination is not favorable in the sense that it would

---

[2] Tenn. Code Ann. § 39-17-305 defines disorderly conduct as occurring when:

> (a) A person commits an offense who, in a public place and with intent to cause public annoyance or alarm:
>> (1) Engages in fighting or in violent or threatening behavior;
>> (2) Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard or other emergency; or
>> (3) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose.
> (b) A person also violates this section who makes unreasonable noise that prevents others from carrying on lawful activities.
> (c) A violation of this section is a Class C misdemeanor.

Tenn. Code Ann. § 39-17-305 (2010).

[3] Defendants filed a document entitled "Supplemental Authority" on January 26, 2011, but this pleading makes no reference to Coleman's original motion for partial summary judgment.

support a subsequent action for malicious prosecution." *Id.* at 531. The trial court referenced two notations allegedly written on the warrants for the citation issued to Coleman, stating: "Dismiss per DA. Please have DA initial" and "Clerk never signed warrant – warrant had to be dismissed." Based on these notations and on excerpts from Coleman's deposition, the trial court held that Coleman would not be able to meet his burden of proving the essential elements of malicious prosecution. Accordingly, the trial court denied Coleman's motion for partial summary judgment on the issue of liability, granted the Defendants' motion for summary judgment, and adopted the legal theory relied on by the Defendants in their motion for summary judgment and supporting memorandum of law. Coleman now appeals.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Coleman argues that the trial court erred in denying his motion for summary judgment.[4]

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04 (2011). In filing a motion for summary judgment, the initial task of the party bearing the ultimate burden at trial has been described as follows:

> When the movant has the burden at trial, the movant's initial task under Rule 56 of showing that it is entitled to a judgment as a matter of law means that the movant must produce evidence for *all* unadmitted elements of the claim or defense, and the evidence must be such that, if uncontradicted, no reasonable

---

[4]In his "Issues Presented for Review," Coleman does not include whether the trial court erred in granting the Defendants' motion for summary judgment, only that the trial court erred in denying Coleman's own motion. "In order for an issue to be considered on appeal, a party must, in his [or her] brief, develop the theories or contain authority to support the averred position as required by Tennessee Rules of Appellate Procedure 27(a)." ***Bunch v. Bunch***, 281 S.W.3d 406, 409 (Tenn. Ct. App. 2008) (quoting ***Hawkins v. Hart***, 86 S.W.3d 522, 531(Tenn. Ct. App. 2001)). An issue not included in the Statement of Issues is not properly before the Court of Appeals. Tenn. R. App. P. 27 (a)(4). ***Bunch***, 281 S.W.3d at 410 (quoting ***Hawkins***, 86 S.W.3d at 531). An item not listed as an issue presented for review is considered waived as this Court is under no obligation to search for, or derive, issues that are not specifically stated in accordance with Rule 27(a)(4). ***Childress v. Union Realty Co.,*** 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002) (citing ***Stewart v. Richmond,*** Shelby Law No. 50, 1987 WL 28061, at *1; 1987 Tenn. App. LEXIS 3123 (Tenn. Ct. App. Dec. 18, 1987). Coleman discusses the Defendants' summary judgment motion in the body of his appellate brief, but because the issue was not included in Coleman's Issues Presented for Review, we decline to consider whether the trial court erred in granting the Defendants' motion under the circumstances of this case.

> jury could find against the movant and the movant would be entitled to a
> directed verdict at trial.

Robert Banks Jr. & June F. Entman, *Tennessee Civil Procedure* § 9-4(m)(3d ed. 2009)(emphasis added). *See also Milan Box Corp. v. Hardy*, No. W2006-02478-COA-R3-CV, 2007 WL 2790680, at \*8-9; 2007 Tenn. App. LEXIS 607, at \*25-26 (Tenn. Ct. App. Sept. 26, 2007). Thus, a plaintiff-movant cannot be granted summary judgment unless he "establishes both the elements of his claim and the invalidity of all asserted defenses." *Milan Box Corp.*, 2007 WL 2790680, at \*9; 2007 Tenn. App. LEXIS 607, at \*26 (citing *Tennessee Civil Procedure* § 9-4(m)); *Heatherly v. Campbell Co. Sch. Bd.*, No. 03A01-9505-CH-00155, 1995 WL 491002, at \*2; 1995 Tenn. App. LEXIS 549 (Tenn. Ct. App. Aug. 18, 1995) (noting that with respect to the plaintiff's motion for summary judgment, the plaintiff would have the burden of going forward with facts to demonstrate that all elements of his claim have been fulfilled). We are required to review the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008).

## ANALYSIS

Coleman argues that the Defendants failed to respond to Coleman's motion for partial summary judgment in accordance with Rule 56.03 and, on this basis, the trial court erred in failing to grant Coleman's motion. Coleman contends that the Defendants' own motion for summary judgment cannot be considered a response to Coleman's motion for partial summary judgment. Coleman maintains that the Defendants' failure to respond in accordance with Rule 56.03 is grounds for this Court to consider Coleman's motion as though the non-movant Defendants had filed nothing whatsoever, citing *Holland v. City of Memphis*, 125 S.W.3d 425 (Tenn. Ct. App. 2003). On that basis, Coleman insists, his motion for partial summary judgment should have been granted.

In the alternative, Coleman contends that the undisputed facts establish the elements of his claim of malicious prosecution. Specifically with regard to the element on which the trial court focused, a termination of the underlying legal proceeding in the claimant's favor, Coleman asserts that the Defendants admitted this element in their answer, and that the trial court erroneously relied on some of the handwritten notations in the record.

Defendants provide this Court with little assistance on appeal. In their initial appellate brief, after citing various facts, the Defendants present no argument, only a reference to the memorandum filed in the trial court in support of *their own* motion for summary judgment. Thus, as they did in the trial court below, the Defendants' initial brief contains no argument

on Coleman's motion for partial summary judgment. Coleman's motion, of course, is the only issue raised on appeal.

After questions from the Court in the oral argument of this appeal regarding the charge of disorderly conduct, the Defendants filed a two-page supplemental brief. In it, the Defendants cite two cases, one for the proposition that the dismissal of a criminal warrant for technical deficiencies does not give rise to double jeopardy, and the other for the proposition that an amended or substituted criminal warrant may be filed. The supplemental brief is largely unresponsive to the Court's questions at oral argument, Coleman's arguments on appeal, or Coleman's motion for partial summary judgment. We soldier on.

With respect to the non-moving party's duties under Rule 56.03, courts have generally held that non-compliance in and of itself is not a basis for granting summary judgment. Robert Banks Jr. & June F. Entman, *Tennessee Civil Procedure* § 9-4(i)(3d ed. 2009) (citing ***Henry v. Gill Indus. Inc.***, 983 F.2d 943, 949-50 (9th Cir. 1993); ***Wienco Inc., v. Katahn Assocs., Inc.***, 965 F.2d 565, 568 (7th Cir. 1992)). ***See also Adickes v. S.H. Kress & Co.***, 398 U.S. 144, 159-60 (1970) (citing Fed. R. Civ. P. 56(e) advisory committee note (1963) ("Where the evidentiary matter in support of [a motion for summary judgment] does not establish the absence of the genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.")); ***Holland***, 125 S.W.3d at 428 (finding that non-compliance with Rule 56.03 "generally will prove fatal"; however, the trial court may in its discretion, waive the requirements of Rule 56.03 where appropriate). However, non-compliance may result in the trial court's refusal to consider the non-moving party's factual contentions and a holding that the material facts set forth in the moving party's required statement of fact are deemed admitted. ***See id. See also Waters v. Tenn. Dep't of Corr.***, No. M2002-00917-COA-R3-CV, 2003 WL 21713421, at *4; 2003 Tenn. App. LEXIS 512, (Tenn. Ct. App. July 24, 2003) (holding that the complete failure to respond to motion for summary judgment and statement of undisputed facts can amount to a conclusive admission that the facts contained in the statement are undisputed); ***Holland***, 125 S.W.3d at 428-29; ***Simmons v. Harris***, No. M2000-00227-COA-R3-CV, 2000 WL 1586451, at *3; 2000 Tenn. App. LEXIS 706, at *7 (Tenn. Ct. App. Oct. 25, 2000) (as consequence of non-moving party's failure to comply with Rule 56.03, the moving party's alleged facts were deemed admitted). ***See also Edwards v. Campbell***, No. E2000-01463-COA-R3-CV, 2001 WL 52776, at *4; 2001 Tenn. App. LEXIS 43, at *10 (Tenn. Ct. App. Jan. 23, 2001) (following ***Simmons***).

Coleman does not point to any authority that *requires* the trial court to deem the moving party's facts admitted, and we have found none. We find nothing in the record indicating that the trial court below deemed Coleman's version of the facts admitted, in light of the

Defendants' failure to respond to Coleman's motion for partial summary judgment. We find no abuse of the trial court's discretion in declining to do so. Therefore, we consider the evidence in the entire appellate record to determine whether Coleman met his burden of proof as to his motion for partial summary judgment.

To make out a claim of malicious prosecution, the claimant must show "(a) that a prior lawsuit or judicial proceeding was brought against the plaintiff without probable cause, (b) that the prior lawsuit or judicial proceeding was brought against the plaintiff with malice, and (c) that the prior lawsuit or judicial proceeding terminated in the plaintiff's favor." *Parrish v. Marquis,* 172 S.W.3d 526, 530 (Tenn. 2005); *Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn. 1992).

With respect to the first element, probable cause exists when there are "such facts and circumstances sufficient to create in a reasonable mind the belief that the accused is guilty of the crime charged." *Leland v. Louisville Ladder Grp., LLC*, No. M2006-02109-COA-R3-CV, 2007 WL 4440923, at *4 (Tenn. Ct. App. Dec. 5, 2007) (quoting *Roberts v. Federal Express Corp.*, 842 S.W.2d 246, 248 (Tenn. 1992)). A party asserting a claim of malicious prosecution "bears a heavy burden of proof in establishing the element of lack of probable cause. . . ." *Wright Med. Tech., Inc. v. Grisoni*, 135 S.W.3d 561, 581 (Tenn. Ct. App. 2001) (citing *Kauffman v. A. H. Robins Co., Inc.*, 448 S.W.2d 400, 404 (Tenn. 1969)). Probable cause exists where the party who instituted the underlying legal proceedings had a reasonable belief in both the existence of facts supporting his or her claim and that those facts made out a legally valid claim. *Wright*, 135 S.W.3d at 581 (citing *Buda v. Cassel Bros., Inc*, 568 S.W.2d 628, 631-632 (Tenn. Ct. App. 1978)). Probable cause is determined from "an objective examination of the surrounding facts and circumstances" at the time the underlying prosecution was initiated. *Roberts*, 842 S.W.2d at 248; *Leland,* 2007 Tenn. App. LEXIS 753, at *12, 2007 WL 4440923, at *4; *Lantroop v. Moreland*, 849 S.W.2d 793, 797 (Tenn. Ct. App. 1992). Much like reasonableness in a negligence claim, the reasonableness of the beliefs of the defendant in a malicious prosecution claim is a factual determination that is ordinarily made by the jury. *Roberts*, 842 S.W.2d at 248-49; *Wright*, 135 S.W.3d at 581.

In view of this standard, we look at whether Coleman met the heavy burden of showing that no reasonable juror could find that there was probable cause to cite Coleman for disorderly conduct when police officers came to Coleman's home on September 25, 2008. The undisputed facts in the record establish that, when Coleman became aware that Smith was "hollering" at the person hired to trim some tree branches, Coleman responded by getting his handgun, strapping it in a holster on his waist, and going outside to repeatedly tell the tree trimmer to disregard Smith and keep trimming the tree branches. When police officers responded to the scene, they were aware from their conversation with the dispatcher that

Coleman had taken his gun out in his yard in the context of the tree-trimming dispute. From talking to Sanders, the officers knew that these neighbors had a history of such disputes, and that some had involved guns and actions perceived to be threatening.

Given these undisputed facts, it can hardly be said that Coleman has established beyond peradventure the absence of probable cause for the citation issued to Coleman.

Coleman argues that he was licensed to carry the weapon, that the safety on the gun was on, that he did not talk directly to Smith but instead told the tree trimmer to keep trimming the errant tree branches, that by the time the police officers arrived Coleman had complied with the dispatcher's request and left his gun on his porch, and that the language on the civil warrant does not support a charge of disorderly conduct. All of these facts could, of course, be considered by the jury in its evaluation of whether the police officers reasonably believed that they had probable cause to issue the citation to Coleman. None of them cause us to conclude that no reasonable juror could find that the officers had probable cause to issue the citation. Clearly, there is at least a genuine issue of fact as to this element of the claim.

To prevail on his motion for partial summary judgment on the issue of liability, Coleman must establish *all* unadmitted elements of his claim of malicious prosecution, showing as to each and every element that no reasonable juror could find against him. We find that he has failed to meet this burden of proof to establish that the citation was issued to Coleman without probable cause. This pretermits Coleman's other arguments, including his arguments that other elements of his claim were admitted by the Defendants or that the trial court erroneously relied on handwritten notations in finding that the legal proceedings were not terminated in Coleman's favor. Thus, we affirm the trial court's denial of Coleman's motion for partial summary judgment on the issue of liability.

As noted above, Coleman did not include the trial court's grant of the Defendants' summary judgment motion in his Statement of the Issues in his appellate brief. Therefore, we affirm the trial court's grant of summary judgment in favor of the Defendants.

## CONCLUSION

The decision of the trial court is affirmed. Costs on appeal are assessed against Appellant James Coleman and his surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE